| 83 | 665 |
|----|-----|
| 84 | 726 |
| 83 | 665 |
| 106 | 90 |
| 83 | 665 |
| 107 | 130 |
| 83 | 665 |
| 108 | 601 |

</div>

JOHN BLAUL & SONS, Appellants, v. W. M. THARP & CO., Appellees.

1. **Action on Account Stated**: EVASIVE ANSWER: EVIDENCE: INSTRUCTIONS TO JURY. Where to an action upon an account stated the defendants filed an evasive answer, which was not, in effect, a denial of the indebtedness alleged, nor of knowledge or information sufficient to form a belief; and set up a counterclaim for damages for the alleged wrongful suing out of an attachment, but when the cause was called for trial the defendants denied verbally an indebtedness to the plaintiff as alleged, and thereupon the court awarded to the plaintiff the right to open and close; and on the trial the defendants, by their testimony, admitted that the debit side of the account was correct, but an alleged admission of that part of the account was not proven, and the evidence as to the credit side of the account was conflicting, *held*, that the court should have instructed the jury that the debit side of the account was admitted, and that an instruction that the burden of proof was upon the plaintiff to establish their account by the weight of the evidence was erroneous.

2. **Attachment**: WRONGFUL LEVY: BOND: DAMAGES. Under an attachment bond conditioned that the plaintiff will pay all damages which the defendant may sustain by reason of the wrongful suing out of the attachment, the plaintiff is liable for any depreciation in the value

of the attached property pending the attachment proceeding, even though such depreciation be due to the negligence of the sheriff in not properly caring for the property while in his hands. [GIVEN, J., *dissenting*.]

*Appeal from Van Buren District Court.*—HON. H. C. TRAVERSE, Judge.

SATURDAY, OCTOBER 24, 1891.

ACTION aided by attachment to recover a balance alleged to be due on account for merchandise sold. The defendants denied indebtedness, and pleaded a counterclaim for the alleged wrongful suing out of the attachment. There was a trial by jury, and a verdict and judgment in favor of the defendants. The plaintiffs appeal.—*Reversed.*

*C. L. Poor* and *Sloan, Work & Brown,* for appellants.

*Robert H. Starr* and *McCord & Johnston,* for appellees.

ROBINSON, J.—I. The petition alleges that the defendants are indebted to the plaintiffs in the sum of two hundred and ninety-three dollars and

**1. ACTION on account stated: evasive answer: evidence: instructions to jury.**

eighty-eight cents, upon an account for merchandise sold and delivered by the plaintiffs to the defendants between the first day of January, 1885, and the fifth day of August, 1888. A statement of account is attached to and made a part of the petition, which shows a balance due the plaintiffs on the eleventh day of June, 1888, of sixty-three dollars and forty-three cents, and numerous articles of merchandise sold on that and other later dates, to the fourth day of the next August. The balance and prices of merchandise sold amounted to the sum for which judgment is

demanded.    The answer admits the purchase from the
plaintiffs of bills of merchandise, but states that the
defendants are now unable to state or set out an
itemized account.    There is no other denial of the sale
of merchandise alleged in the petition.    The answer
also states that since the first day of January, 1885, the
defendants have paid to the plaintiffs on the account
in suit, at different times, large sums of money, the
amounts and dates of payment of which the defendants
are unable to state.    The answer further states that the
defendants had given to the plaintiffs, to be held as
collateral security, notes for six hundred dollars, with
a chattel mortgage to secure them on a certain stock of
general merchandise; that the mortgage had been
foreclosed, and the indebtedness of the defendants to
the plaintiffs fully paid from the proceeds; and all
indebtedness from the former to the latter is fully
denied.    The answer, by way of counterclaim, alleges
that the attachment was sued out wrongfully and
maliciously, and judgment is demanded on the attach-
ment bond for the sum of six hundred dollars.    On
the trial all claim for maliciously suing out the attach-
ment was waived.    The plaintiffs in their reply admit
the making of the notes, but'claim that credit for their
amount was given the defendants on the day they were
made, to-wit, on the eighteenth day of November,
1885.    The writ of attachment was issued on the
second day of November, 1888; and on the same day was
levied upon the stock of merchandise of the defendants,
a part of which was included in the chattel mortgage.
The sheriff also had in his hands the mortgage, which
he proceeded to foreclose, selling enough of the mer-
chandise thereunder to pay the notes secured by the
mortgage, which then amounted to seven hundred and
forty-four dollars.    The remainder of the attached
goods was held until about the month of July, 1889,
when it was sold for two hundred and twenty-five

dollars.   The defendants claim that the attached goods
left after the mortgage sale were worth about nine
hundred dollars, and that they have been damaged in
a sum equal to the difference between their value as
stated and the amount for which they were sold by
reason of the attachment.

When the cause came on for trial, each party
demanded the right to open and close the case.   The
court was unable to determine, from an inspection of
the pleadings, upon whom was the burden of proof,
and, therefore, asked the defendants if they claimed to
have made any payment prior to June 11, 1888, for
which credit was not given, and was answered in the
affirmative.   The court then asked the defendants if
they admitted that on the date named they owed the
plaintiffs a bill for sixty-three dollars and forty-three
cents, and was answered in the negative.   Thereupon
it awarded the opening and closing of the case to the
plaintiffs.

On the trial, to prove their claims, the plaintiffs
introduced certain statements of account.   No objec-
tions seem to have been made to the form of the proof,
but the plaintiffs were interrogated closely in regard to
its correctness.   They also offered evidence to the effect
that on a former trial an attorney for the defendants
had admitted that the debit side of the account was
unquestioned, but that their claims were for credits not
given.   The attorney, who it was said made the admis-
sion, denied it as a witness, and the alleged admission
was made somewhat prominent as an issue.   But the
account of the plaintiffs, so far as it related to mer-
chandise sold and delivered, was not otherwise dis-
puted on the trial.   On the contrary, the defendant
W. M. Tharp, who is the principal, if not the only real
defendant, testified:   "If I had thought the credit was
all right, there would have been no differences in our
accounts.   I thought the difference was all on the credit

account.  We did find afterwards that we had been
charged with goods that we never got,—a load of salt.
It does not appear in this account.  I think it was
taken out, and we have nothing to do with it."  That
being the condition of the case, the court charged the
jury as follows:

"3 1-2.   At the commencement of this trial each
party claimed that they were entitled to open and close
the case, on the alleged ground that the burden of the
proof in the first instance rested on them.   The court
awarded the opening and closing to the plaintiffs.   I
shall not now stop to inquire whether the court's action
in this regard was right or wrong.   The case has been
tried on that theory, and the plaintiffs have had the
benefit of their claim.   Hence, you are instructed that,
under the circumstances, the burden of proof is on the
plaintiffs to establish, by the weight of the evidence,
their account; that is, the debit side of their account.
The plaintiffs claim that on a former trial counsel for
the defendant, in the presence of the defendant, admit-
ted the correctness of the plaintiffs' account as set out
in an exhibit that has been introduced in evidence.
This is denied by the defendant.   The jury will deter-
mine where the truth is as to this contention.   But you
should consider all the evidence in the entire case in
determining whether plaintiffs have established their
account for goods and merchandise alleged to have
been sold defendant.   On the present trial, has defend-
ant, while on the witness stand, admitted the correct-
ness of the debit side of plaintiffs' account, or has he
failed to deny any portion thereof?"

We think this portion of the charge should not
have been given.   Its natural and probable effect was
to bewilder and mislead the jury as to a matter about
which there was, in fact, no dispute.   The debit side of
the account, as stated in the petition, was not denied
in the answer.   The defendants may have been unable

to state the amounts of the bills of goods they had
purchased, or to set out an itemized account, and yet
they may have been entirely satisfied that the state-
ment of account made by the plaintiffs was correct.
That began with an alleged balance which, so far as
the pleadings show, may have been agreed upon by the
parties on some settlement as correct; and in that case
it would have been immaterial whether the defendants
knew at the time their answer was filed what items of
account were considered in reaching that balance. As
to that, the answer was evasive, and not in effect a
denial of the matter pleaded, nor a denial of knowledge
or information of such matter sufficient to form a belief,
required by Code, section 2655, subdivision 2. But, had
the answer contained a sufficient denial, there was only
a seeming conflict in the evidence as to the debit side
of the account. Had proof of the account depended
upon the alleged admission of the attorney for the
defendants, the case would have been different; but
that was of no importance whatever, in view of the
proof of account given by the plaintiffs, and the admis-
sion by Tharp to the effect that it was correct. The
fact that the court had decided at the beginning of the
trial that the burden of proof was on the plaintiffs was
entitled to no weight, for the reason that, if there was
any doubt as to the issue presented by the pleadings,
there was no room for doubt when the charge was
given as to the correctness of the debit side of the
account, for it had then been conceded. The para-
graph of the charge in question makes prominent the
admission in regard to the correctness of the account
alleged to have been made on a former trial, although
that had become wholly immaterial, and treats as in
doubt the correctness of the debit side of the account,
and the admission of the defendants in regard to it.
It was the duty of the court to instruct the jury plainly
that the claim of the plaintiffs in regard to the mer-

chandise sold, including the prices charged, was admitted, and not in dispute. That the jury may well have been confused and misled by the charge, to the prejudice of the plaintiffs, is shown by the condition of the record.

The defendants claim to have made three payments to a traveling agent of the plaintiffs named Riepe, for which credit has not been given. These payments amount in the aggregate to five hundred and seventy-four dollars and seventy-three cents. The plaintiffs and Riepe deny having received them, or any part of them. Aside from the testimony of Tharp, the evidence to show payment is very unsatisfactory, consisting of memoranda as follows: At the bottom of a bill for seventy-three dollars and ninety-six cents is written: "Paid one hundred and seventy-four dollars and five cents, July 25, 1885. R." At the bottom of another bill, dated October 26, 1885, which shows a balance due the plaintiffs of two hundred dollars and sixty-eight cents, is written in pencil: "Received payment. R." At the bottom of another bill, or statement, dated November 6, 1886, which shows an aggregate of five hundred and thirty-six dollars and fifty-seven cents due the plaintiffs, is written in pencil: "Received 200. R." Riepe not only denies that he made or signed these memoranda, but testifies that when the first one is claimed to have been made he was not at the defendants' place of business, but in a distant part of the state; and that on the date of the last bill, and at the time the memorandum thereon is claimed to have been signed, he was not in the employ of the plaintiffs, had not been for nearly four months, and was not at the place where it was said to have been made. Evidence was introduced to show that the memoranda were not in the handwriting of Riepe, and some of the documentary evidence which was introduced for that purpose has been certified to

this court, but we do not find it proper to determine
the question thus presented. If the payments in dis-
pute were really made, then it appears that the defend-
ants had overpaid their account to the amount of more
than three hundred dollars when this action was com-
menced; credit being given for the money realized on
the foreclosure of the mortgage. No such claim as that
was made before this action was brought, the answer
does not allege overpayment, and we do not understand
that the defendants now claim that they had overpaid
the plaintiffs so much, if any, when this action was.
commenced. But we cannot tell what the jury found
in regard to these payments. They may have found
that they were not made, yet, if they also found that
the plaintiffs had not proven their claim by a prepond-
erance of the evidence, as they seemed by implication
authorized to do by the charge of the court, they might
for that reason have concluded that the attachment was.
wrongfully sued out.

II. The plaintiffs asked the court to give an
instruction as follows: "9. Even if you find the
2. ATTACHMENT: writ of attachment was wrongfully sued
wrongful levy: out, you cannot allow any damages to the
bond: dam-
ages.      defendant by reason of loss or deprecia-
tion in value of goods through the neglect of the sheriff
to properly care for and protect the goods taken under
the writ." The instruction was refused, and the jury
were charged as follows: "11. If you should find that
the writ of attachment in this case was wrongfully sued
out, then the measure of defendant's damages on his
counterclaim would be the fair cash value in the market
of defendant's goods that were levied upon and sold
under said writ of attachment, estimated at the time of
said levy, with six-per-cent.-per-annum interest thereon
from that time to the present. But you should exclude
from said estimate any goods sold under the foreclosure
of the chattel mortgage, and you must also deduct.

from the sum arrived at any amount in the hands of the sheriff that is ready to be turned over, and that is the proceeds of defendant's goods that were sold under said writ of attachment.    *    *    *"

The appellants complain of these rulings of the court, insisting that in no event are they liable on their attachment bond for any damages which were not the natural and direct result of the wrongful suing out of the writ, and that damages which were caused by the negligence of the sheriff were not the result of suing out the attachment, and are not covered by the bond. Section 2959 of the Code requires the plaintiff, in an action aided by attachment, to give a bond "conditioned that the plaintiff will pay all damages which the defendant may sustain by reason of the wrongful suing out of the attachment." Section 2961 provides that, in an action on such bond, "the plaintiff therein may recover if he shows that the attachment was wrongfully sued out, and that there was no reasonable cause to believe the ground upon which the same was issued to be true, the actual amount of damages sustained and reasonable attorney's fees to be fixed by the court."

In this case there is evidence which tends to show that during the time which intervened between the levying of the attachment upon the goods in November, 1888, and their sale eight months later, some of the goods were damaged by mice and moisture. The question presented is whether, if such damages were caused by the negligence of the sheriff, the plaintiffs are liable on their bond, under the provisions of the statute quoted. Those provisions refer in terms to damages which result from the wrongful suing out of the attachment; but it is manifest that they are also designed to include all damages which result from the taking and detention of property under the writ. It is the object of the statute to afford the defendant full indemnity against all damages which may result from

the wrongful issuing of the writ, including that which results from his loss of the possession, use and control of the property taken. In *Campbell v. Chamberlain*, 10 Iowa, 340, it was said that, in an action on an attachment bond, the plaintiff is entitled to recover, as damages, "all losses and expenses incurred by him in making defense to the attachment proceedings, and such losses as he may have sustained by being deprived of the use of the property attached, and any injury thereto by its loss or depreciation in value." See, also, 2 Sutherland on Damages, 59; *Meshke v. Van Doren*, 16 Wis. 324; *Reidhar v. Berger*, 8 B. Mon. 160; *Frankel v. Stern*, 44 Cal. 173; *Fleming v. Bailey*, 44 Miss. 135. In section 175 of Drake on Attachments it is said that actual damages in such cases may properly be comprehended under two heads: *First*. Expense and losses incurred by the party in making his defense to the attachment proceedings; *second*, the loss occasioned by his being deprived of the use of his property during the pendency of the attachment, or by an illegal sale of it, or by injury thereto, or loss or detention thereof." In serving the writ, the sheriff is the agent of the attachment plaintiff, and for many purposes the acts of the officers are, in legal effect, the acts of the plaintiff. *Robinson v. Keith*, 25 Iowa, 321. He is given possession and control of the attached property by the act of the plaintiff, and is to a considerable extent subject to his direction. Although he may be liable to the plaintiff for his negligence, yet we are of the opinion that, as between the plaintiff and the owner of the property, he should be treated as the agent of the former, so far as liability for his negligence is sought to be enforced. There is no good reason for requiring the owner of the property in such a case to split his cause of action, and proceed against the plaintiff for a part, and against the sheriff for the remainder. In practice, it would frequently be difficult, if not impos-

sible, to show what portion of the damages resulted from the negligence of the sheriff, and what from causes for which he was not in any manner responsible; and we do not think it was the intent of the law to impose that burden upon the property-owner. We conclude that the attachment bond is designed to protect him from the negligent performance of duty by the sheriff in caring for the property, as well as from other damages which result from the wrongful suing out of the writ. The charge given by the court expressed the rule of damages applicable to cases of this kind.

Other questions discussed by counsel are not of a character to be likely to arise on another trial, and, therefore, need not be determined. For the error in the charge we have indicated the judgment of the district court is REVERSED.

GIVEN, J. (*dissenting*).—I do not concur in the conclusion "that the attachment bond is designed to protect him [the defendant] from the negligent performance of duty by the sheriff in caring for the property." It is my opinion that such damages are not within the purpose or provisions of the statute or bond. The purpose of the bond is to indemnify against the wrongful act of the plaintiff in suing out the attachment, and does not apply to any other person or act. It secures to the defendant all damages "immediately consequent upon the wrongful act." *Plumb v. Woodmansee*, 34 Iowa, 116. By it he is secured for all damages caused by the detention and depreciation of his property under proper care, for these are consequences that necessarily and immediately follow from suing out the attachment. They are consequences contemplated in the law and by the parties, and within the condition of the bond. That the officer will neglect his duty, and wrongfully permit the property to waste

or depreciate, is not within the contemplation of the law or the parties. It is not a necessary or immediate consequence of suing out the attachment, and may result whether the attachment be rightful or wrongful. Such damages are not even remotely caused by suing out the attachment, but are solely caused by the negligence of the officer. To hold the plaintiff thus liable on his bond is to enlarge its condition beyond that authorized or expressed, and to charge him with the wrongful act of another, which he has not authorized, and which he may be powerless to prevent. Section 2961 of the Code does not enlarge the damages to be recovered under section 2959. Taken together, it is the actual damage sustained by reason of the wrongful suing out of the attachment. In my view, none of the authorities cited in the opinion are against my conclusions. The loss or depreciation mentioned is such as is immediately consequent upon the wrongful suing out of the attachment, and not upon some other and different wrong. The theory of the opinion, as I understand it, is that the officer holds possession as agent for the plaintiff, who, therefore, is liable for his wrong. Grant it, and yet that liability is not upon the bond, unless it is within its conditions; and, as I maintain, this bond is not so conditioned. The possession of the officer is, for all the purposes of the writ, the possession of the plaintiff, because, by placing the writ in his hands, the plaintiff has authorized the detention of the property; and, hence, is liable for its detention and depreciation, under proper care. The plaintiff does not, however, authorize the officer to neglect his duty, and to wrongfully allow the property to waste or depreciate. *Robinson v. Keith*, 25 Iowa, 322, does not support the position that plaintiff is liable for such wrongful act of the officer. The remedy in such case is against the officer who, without sanction or authority, commits the wrong.