THE CITIZENS' NATIONAL BANK, Appellant, v. C. C. LOOMIS.

**Assignment of Judgment:** WHAT PASSES BY. Where a landlord's attachment is issued, and the property of the tenant is seized, and judgment is rendered for the landlord, on assignment of the judgment, all right of the judgment creditor to recover damages against the sheriff for negligence in the care of the property seized, passes to the assignee.

**Care of Attached Property:** DIRECTION OF PLAINTIFF. Where a sheriff, levying an attachment, delivered the property to a receiptor, by direction of the plaintiff in the attachment, he is not liable for the negligence of the receiptor.

DIRECTION OF ATTORNEY: *"Agreement by attorney" defined.* An order by an attorney to a sheriff to turn over property attached, to a third person for safe keeping, is not an agreement, within Code, section 213, providing that no evidence of an agreement of an attorney shall be received except the statement of the attorney, or his written agreement, or an entry thereof on the records of the court.

**Return of Officer:** CONCLUSIVENESS: *Parol evidence.* Where a sheriff, to his return on a writ issued in a landlord's attachment, annexed a receipt of a third person for the property attached, and, also recited that he held the property subject to the order of the court, he can show by parol that the property was delivered to such third person by the direction of the attorney for the plaintiff in the attachment. The return was not required to show that the property had been delivered to a third person on the direction of plaintiff, and as to matters not authorized to be returned, the return is not conclusive.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, DECEMBER 11, 1896.

IN March, 1889, one Smith commenced an action against Hess, in the district court of Polk county, Iowa, for the recovery of rent, and asking the issue of a landlord's attachment. The writ was issuance and placed in the hands of the defendant, then sheriff for service. On April 12, 1889, the writ, with the following return thereon, was filed with the clerk of said court: "State of Iowa, Polk County—ss: I hereby certify that the annexed writ of attachment came into my hands the first day of March, 1889, at — o'clock, — M. of said day, and by virtue thereof I levied on the following described personal property: All of the furniture, fixtures, carpets, beds, bedding, kitchen and dining room furniture, dishes, etc., in the Windsor Hotel (formerly the Given House), in Des Moines, Polk County, Iowa, as the property of said defendant; said levy being made on the first day of March, 1889, at — o'clock, — M. of said day. And I now hold said property subject to the order of the court, and now, the seventh day of March, 1889, return this writ, with my doings in the premises. C. C. Loomis, Sheriff of Polk County, by L. A. Shaw, Deputy." On the back of the writ, the following appears: "Received of C. C. Loomis, sheriff, for safe keeping, all the furniture, fixtures, carpets, beds, bedding, kitchen and dining room furniture, dishes, etc., being all the furniture, etc., in the Windsor (formerly the Given) House, and I agree to deliver the same to said sheriff on his demand or order. March 1, 1889. J. M. Griffith." Such proceedings were had in that case as that a judgment was entered in plaintiff's favor for six hundred and eighty-six dollars and ninety-eight cents and costs, including forty-two dollars and ninety-three cents attorney's fees; and an order was entered that a special execution issue for the sale of the attached property. Thereafter, upon an appeal taken by the defendant to this court,

the judgment below was affirmed; 83 Iowa, 238 (48 N. W. Rep. 1030), and on July 10, 1891, and a special execution issued for the sale of the attached property. This execution was returned by the sheriff, unsatisfied, no property being found. Thereafter, the judgment was assigned to plaintiff, and in March, 1892, it instituted this action against the defendant for the recovery of the amount of said judgment, and costs. The cause was tried to the court and a jury, and a verdict returned for the defendant, upon which judgment was entered. It appeared on the trial, that the property levied upon was sufficient to have satisfied the judgment, interest, and costs; and that at the time the judgment was affirmed by the supreme court against Hess, he was, and ever since has been, insolvent. Plaintiff appeals. —*Affirmed.*

*Gatch, Connor & Weaver* and *J. A. McCall* for appellant.

*Read & Read* and *D. F. Callender* for appellee.

KINNE, J.—I. Appellee insists that, even if there was error in the ruling of the court in the respects hereafter spoken of, the same was without prejudice, for the reason that plaintiff has no right to prosecute this suit. The claim is that the assignment of the judgment alone did not carry with it to plaintiff the right to sue the sheriff for damages arising by reason of his alleged negligence in permitting the property levied upon to be disposed of. Just what rights will pass by the assignment of a judgment to an assignee, other than the right to enforce the judgment in the usual way, has never been determined by this court. In this case, the assignment, in terms, related to the judgment only. If, therefore, plaintiff has a right to sue the sheriff for

negligence, it is because such right passed by the assignment of the judgment, as an incident to it. If appellee's claim is sound, then no right of action, as against the sheriff, for damages, passed to the plaintiff bank, by the assignment. Now, the right, if any, to recover damages, existed and was vested in Smith, the possessor of the judgment, prior to the time the assignment was made. If it did not pass by the assignment of the judgment, it must still remain in Smith. It can hardly be successfully contended that Smith might part with all his interest in the judgment, and still reserve to himself the right to sue the sheriff for damages arising out of failure to do his duty in relation to the disposition of the property which had been taken on a writ issued by virtue of the very claim upon which the judgment itself was based. Nor can it be said that the assignment of the judgment had the effect of absolving the sheriff from liability for negligence in caring for the attached property. Hence we think, if a cause of action existed against the sheriff for damages for such negligence, prior to the assignment of the judgment, it must be held to still exist in favor of some one, inasmuch as there is no claim that it has been satisfied, or been barred by the statute of limitations. As we have indicated, Smith, having parted with his interest in the judgment, could not maintain an action against the sheriff, because it was the interest in the judgment, alone, which entitled him to claim damages for the negligent loss of the property upon which he relied for the satisfaction of the same. Now, the original case was by the defendant appealed to this court, where the judgment was affirmed. A special execution properly issued for the sale of the attached property. That the right to this execution passed by the assignment of the judgment cannot be doubted. So, also, the assignee would have the right to have the property

sold, and the proceeds applied in payment of the judgment. Now, if the sheriff has, by negligence, permitted the property to be lost, destroyed, or disposed of, so that it cannot be reached by this special execution, he has thereby deprived the present holder of the judgment of a substantial right, for which, in a proper case, he should be held liable to make restitution. It is the general rule that the "assignment of a judgment necessarily carries with it the cause of action on which it is based, together with all the beneficial interest of the assignor in the judgment and all its incidents." 2 Freeman, Judgm. section 431; *Ullman v. Kline*, 87 Ill. 268; *Ryall v. Rowles*, 2 White & T. Lead. Cas. Eq. p. 1667; *Schlieman v. Bowlin*, 36 Minn. 198 (30 N. W. Rep. 879). In the Minnesota case above cited, which was an action upon a replevin bond by the assignee of the judgment, the court said: "It is a familiar rule in equity, of universal application, that the assignment of a demand entitled the assignee to every assignable remedy, lien, or security available by the assignor as a means of indemnity or payment, unless expressly excepted or reserved in the transfer of the demand. The assignment of the demand, which is the principal thing, operates as an assignment of all securities for its recovery or collection, and upon such securities the assignee, as the real party in interest, may maintain an action in his own name." 2 Jones, Mortg. sections 829, 1316, 1377. In the Illinois case it was held that an appeal bond was but an incident of the debt, and a right to sue thereon was vested in the assignee of the judgment. As supporting the general rule above stated, see 1 Am. & Eng. Enc. Law, p. 884; 2 Black, Judgm. sections 948, 952. So, it has been held that the assignee of a judgment takes the assignor's right to enforce the judgment by supplemental proceedings. *Burns v. Bangert,* 16 Mo. App. 22. We are aware of the fact that there are some authorities which

do not go to the extent of those above cited.  Thus, in Michigan it has been held that where an attachment was issued and levied upon property, and a statutory bond given to the sheriff by the defendant, who retained possession of the property, and the judgment was afterwards assigned by an instrument that did not mention the bond, such assignment did not authorize the assignee to sue upon the bond in his own name.  *Forrest v. O'Donnell*, 42 Mich. 556 (4 N. W. Rep. 259).  And see *Timberlake v. Powell*, 99 N. C. 233 (5 S. E. Rep. 410).  We think that the assignment of the judgment in the case at bar carried with it the right to the assignee to avail himself of any remedy or means of indemnity, security, or payment possessed by, or which could have been made available to, the assignor, as against the sheriff.

II.  On the trial, the defendant introduced evidence tending to show that, at the time the property was levied upon, the attorney for the plaintiff in that action, directed the deputy sheriff, who made the levy, to place the goods in the custody of one Griffith, as receiptor, and that it was done.  The receipt of Griffith for the goods appears on the writ, but not in the return.  This evidence, and more of a similar character, was objected to, on the ground that it tended to contradict the return of the officer.

The court held, that the return could not be contradicted by parol, but said:  "The fact that, by direction of plaintiff, it [the property] was turned over to the receiptor, if it was, does not contradict the levy."  It may be conceded to be the general rule, that a sheriff's return cannot be contradicted by parol evidence; that in a suit by the creditor against the sheriff, his return is *prima facie*, if not conclusive evidence against the officer.  *Tillman v. Davis*, 28 Ga. 494; Crocker Sher. section 46; Murfree, Sher. section 866; *Macomber v. Wright* (Mich.) (65 N. W. Rep. 610);

Drake, Attachm. sections 204, 206; 1 Shinn, Attachm. sections 226, 227; 22 Am. & Eng. Enc. Law, pages, 683, 684. By an examination of the foregoing authorities, and the cases therein referred to, it will be seen that there are many exceptions to this rule. Our statute provides: "The sheriff shall return upon every attachment what he has done under it. The return must show the property attached, the time it was attached, and the disposition made of it. * * *" Code, section 3010. It is also well settled, that return upon a writ of attachment is evidence only, of what can properly be embraced in the return. In *Aultman v. McGrady*, 58 Iowa, 118 (12 N. W. Rep. 233), it is said: "There is no provision for a return showing the acts of any one but the officer. A statement in the return purporting to show the acts of some one other than the officer, is without authority of law, and surplusage." The provisions as to returns on executions are substantially the same as those relating to a return on a writ of attachment. Therefore, a return embracing matters not required by statute, or which relate to acts done outside of the officer's duty, would not be receivable as evidence of such facts, nor would it in any way conclude the parties. 1 Shinn, Attachm. section 227; Freeman, Ex'ns, sections 364, 366; *Plow Co. v. Jones*, 71 Iowa, 238 (32 N. W. Rep. 280); Murfree, Sher. section 867. Under the authority of *Aultman v. McGrady, supra,* the sheriff was not required to set out in his return the fact, if such it was, that he had delivered the attached property to Griffith, the receiptor, in pursuance of the directions of the plaintiff. That would have been the recital of the acts of persons other than the officer, which the statute does not require to appear in the return. Now, it might be proper to show in the return the fact that the officer had turned the goods over to a party named as a receiptor, but to set out

that such action was taken at the request or direction of some one is not within the requirements of the statute. While the fact of the placing of the property in the hands of Griffith as a receiptor did not appear in the return, it did appear from Griffith's receipt on the back of the writ. Surely, no prejudice could arise because the naked fact that the property had been placed in the hands of some one as receiptor did not appear in the return. So far as the plaintiff was concerned, that fact, if stated in the return, would not have advised it that the property was placed in the receiptor's hands by the direction of its assignor.

Counsel for appellant says: "We grant that it was not necessary to state in the return the simple and unqualified fact that the officer had left the property with the receiptor, but insist that, to save himself from being liable on his return for its negligent loss, it was necessary to state the fact, if a fact, that he did so by direction of the judgment creditor." The contention appears to us, in view of the requirements of the statute, to be unsound. The return stated all that the law required. To have set forth the fact that, by direction of the judgment creditor, the property had been placed in Griffith's hands, would have been the recital of the fact or direction of one other than the officer, and, as we have seen, was not proper. The evidence introduced over plaintiff's objection was as to a fact not required to be stated in the return, and therefore properly no part of it, and hence it did not tend to contradict the return.

It is said that, because the sheriff's return shows that he holds the property subject to the order of the court, therefore evidence that it is held by a receiptor, under the direction of the judgment creditor, is a contradiction of the return. We do not think this is so. In a sense, at least, the property, having been levied upon by the officer, is in his

possession, even though in the hands of a receiptor nominated by a judgment creditor. "When the property attached is by the officer delivered into the hands of a keeper or receiptor, such person is the agent of the officer making the attachment, and for his torts or negligence in respect to the property the officer is liable. When, however, the property is delivered to a bailor named by the plaintiff, the officer is relieved thereafter from responsibility to the plaintiff for the safe keeping of it." 1 Shinn, Attachm., section 392. Ordinarily, and in the absence of evidence to the contrary, it would be presumed that the possession of the receiptor was the possession of the sheriff. Nor does it cease to be such because, by reason of his own acts, the judgment creditor is not in a position so that he may hold the officer personally liable for damages which arise by reason of the receiptor's negligence. The property attached, though left with a receiptor by direction of the judgment creditor, is still in the custody of the sheriff. If it were not so, the levy would, in law, be abandoned. Drake, Attachm. (7th Ed.), section 350. We are of the opinion that the evidence objected to was properly admitted, and that it did not contradict the return of the officer.

III. There can be no doubt that the officer levying the attachment had the right to deliver the property to Griffith, the receiptor, by direction of the judgment creditor, the plaintiff in that action; and, if he did so by the direction of said plaintiff, or his attorney, he would be relieved from personal liability. *Davis v. Maloney*, 79 Me. 110 (8 Atl. Rep. 350); *Shepherd v. Hall*, 77 Me. 569 (1 Atl. Rep. 696); Drake, Attach. (7th Ed.) section 361; *Jenney v. Delesdernier*, 20 Me. 183; *Willard v. Goodrich*, 31 Vt. 597; *Strong v. Bradley*, 14 Vt. 55; *Donham v. Wild*, 19 Pick. 520; 1 Shinn, Attachm. section 392. It

is said in Freeman on Executions (2d Ed., section 108): "One inquiry will be answered here. Who is entitled to control the writ? The officer should always bear in mind that the writ is intended for the benefit of the plaintiff, who alone is interested in its enforcement. The interests and wishes of the plaintiff should at all times be respected.   *   *   *   But all directions of the plaintiff not savoring fraud nor undue rigor and oppression must be obeyed, or the officer will be held itable for injuries flowing from his disobedience."

IV.   It is said that the testimony admitted showed an agreement, and that parol evidence should not have been admitted to establish it.   Our Code (section 213) provides that an attorney and counselor has power "to bind his client to any agreement, in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court." It is claimed in this case that the direction to turn the property over to Griffith, the receiptor, was given by the attorney for the judgment creditor. He denies so doing; hence it is said the evidence of the deputy sheriffs was not admissible. If this direction of the attorney to place the property in Griffith's hands as a receiptor was given, and if it can be said to constitute an agreement, within the meaning of the statute, then the testimony should not have been admitted. That it was not an agreement in a statutory sense seems too clear to admit of a doubt. It was simply an order or direction given to the sheriff, which it is claimed, he complied with.

We have considered every question raised which is deemed of importance, and reach the conclusion that there was no error in the respects complained of. —AFFIRMED.

---

M. A. CREGLOW, Appellant, v. CREGLOW BROTHERS, *et al.*

**General Assignment:** PREFERENCES: *Validity.* Evidence that a father sold to his sons their partnership stock in trade, taking their notes for the price; that they had no other property subject to execution, and the father knew it; that, after conducting business at a loss, the sons, knowing themselves bankrupt, through false statements to a commercial agency, obtained goods on credit, for the purpose of stocking up and then failing; that the sons then executed a chattel mortgage on their entire stock to their father for their entire debt to him, and, about an hour afterward, on the advice of the father's attorney, made an assignment for the benefit of creditors to their brother-in-law, warrants a finding that the mortgage and assignment constitute one transaction, in effect, a general assignment for the benefit of creditors, with a preference, which, under Code, section 2115, is void.

MORTGAGE CREATING PREFERENCE. Under Code, section 2115, declaring a general assignment by an insolvent for the benefit of creditors invalid, if not made for creditors equally, a mortgage constituting a part of and rendering a general assignment invalid because it creates a preference, is itself void as against creditors of the insolvent.

*Appeal from Franklin District Court.*—HON. D. R. HINDMAN, Judge.

FRIDAY, DECEMBER 11, 1896.

SUIT in equity to foreclose a chattel mortgage upon a stock of goods and merchandise. There was a hearing on the merits, and a decree for the defendants. Plaintiff appeals.—*Affirmed.*

*J. M. Hemingway, D. D. Murphy, D. J. Murphy,*
and *J. H. Trewin* for appellant.

*Taylor & Evans, E. P. Andrews,* and *Blythe, Mark-
ley & Smith* for appellees.

ROTHROCK, C. J.—On the seventeenth day of
November, 1894, the defendants, Creglow Bros., were
engaged in keeping a general store at Hampton, in
Franklin county.    On that day .they executed and
delivered to the plaintiff a chattel mortgage upon all
of their stock in trade to secure the payment of a
promissory note of that date for fourteen thousand
three hundred and thirty-two dollars.    The note was
made payable in one month after its date.    On the
same day, and within a short time after the execution
of the mortgage, said defendants executed an assign-
ment of their property for the benefit of their credit-
ors.    Both instruments describe the same property.
The said firm of Creglow Bros. had then no property
excepting their said stock of goods.    Within a short
time after the execution of said mortgage and assign-
ment, the other defendants in this case, being credit-
ors of said partnership, commenced actions on their
claims, and attached the property, thus disregarding
the mortgage and assignment.    Thereupon this action
was commenced against the creditors, and the question
involved in the case requires a determination of the
validity of the mortgage. The plaintiff claims that it was
taken to secure a just debt, and the defendants insist it
is void upon several grounds.    If the mortgage is held
to be void on any issue raised by the answer, there is
then no question that the liens of the attaching
creditors are valid.    The partnership of Creglow
Bros. consisted of Charles Creglow and George
Creglow.    At the time the mortgage and assignment

were made, George was twenty-four and Charles twenty-seven years old. The plaintiff is their father. The two sons had been in the mercantile business for several years. Their first venture in that line of business was at Guttenburg, in Clayton county, in the year 1891. There is evidence which tends strongly to show that their father was then a partner in the business. That business was closed out by a sale of the stock in trade in April, 1892. The plaintiff was a partner with one Millan in a store at Glen Haven, Wis., and the partnership was dissolved by a division of the stock in trade, and the two sons of the plaintiff took their father's share of the property and started a store at Northwood, in this state, where they continued in business until March, 1893, when they moved their store to Waseca, Minn., and they remained there until July, 1894. In the month of August in the same year, they removed to Hampton, where they continued in the same business until they closed out by executing the mortgage and the assignment in controversy in this case.

II. The defendants claim that the mortgage was void, as against them as creditors, on the following grounds: (1) That the instrument is without consideration, and was made to hinder, delay, and defraud creditors; (2) that the plaintiff was a secret member of the firm of Creglow Bros.; (3) that the plaintiff and Creglow Bros. and one Beddow, whom they made assignee, entered into a conspiracy to secure a large quantity of goods on the credit of Creglow Bros., and that, when so secured, they should be transferred to the plaintiff to pay his claim; (4) that the mortgage was a part of a general assignment made by Creglow Bros., and is void, in law, because it prefers the plaintiff. It is not our purpose to set out the evidence. To do so would unduly extend this opinion. We do not believe that the facts as disclosed in the testimony,

would sustain a finding of the alleged secret partnership, and it would be error to hold that the mortgage was without consideration; and, while there is evidence tending to show that there was an understanding between the father and sons that the store was to be stocked up so as to be sufficient in value to secure the debt due to the plaintiff, yet we do not think the decision of the case should be put upon that ground. But we believe that the decree should be affirmed upon the ground that the mortgage is void because it was part of the transaction which culminated in the assignment, and in so holding, we think all of the evidence which it is claimed support the other defenses should be considered.

III.    Section 2115 of the Code is as follows: "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims." This provision of the statute has many times been under consideration by this court, in connection with cases involving the validity of a mortgage, or mortgages, and a general assignment of the property of the mortgagor. It has uniformly been held that, if the mortgage is executed without any reference to a general assignment, and afterwards, and as an independent transaction, in no manner connected with the mortgage, and upon an intention formed after the making of the mortgage, a general assignment is made, the mortgage, if taken without fraud and in good faith, for the payment of an honest debt, is valid. See *Bradley v. Bailey*, 95 Iowa, 745 (64 N. W. Rep. 758), and cases there cited. The same case, and many others, hold that if the two acts,—the making of the mortgage, and the general assignment,—are one transaction, and both made in pursuance of an intention to make a general

assignment, they amount to a general assignment with preference, and the mortgage is void under the statute. See *Elwell v. Kimball*, * (69 N. W. Rep. 286). The question to be determined, under the facts and circumstances disclosed in evidence, is whether the plaintiff's mortgage is a valid instrument. We will not recite the testimony of the witnesses. It will be sufficient to state, in a general way, the facts which we regard as established by the evidence. When the plaintiff sold his sons the stock of goods which was removed to Northwood, the consideration of the sale was about four thousand dollars, which was evidenced by promissory notes. The business at Northwood and at Waseca resulted in a loss, and when the old stock was removed from the last-named place to Hampton, the sons had no other property liable to execution. All of their business enterprises were failures. The debt to the father was increased by drafts upon him, until, at the time they removed to Hampton, it amounted to nearly the sum for which the mortgage was given. It quite satisfactorily appears, from the acts of the sons, that they did not at any time contemplate to continue in business at Hampton. The plaintiff was at the place about the time of the removal. They were unable to pay the freight charges for the shipment of the goods, and the plaintiff furnished them with one hundred and fifty dollars for that purpose. When they removed to Hampton, one of them sent his family and his household furniture to South Dakota, where they remained, and he went there when the enterprise culminated. One of them made a false statement to Dun's Commercial Agency in order to obtain credit. On the faith of this statement, they purchased a large quantity of goods on credit. They bought largely in excess of what was

---

*NOTE.—This case was held out on re-hearing and will appear in a later Iowa report.—REPORTER.