W. F. GUTSCHENRITTER, Appellant, v. GEORGE WHITMORE, E. C. DAMEWOOD, L. B. GAMBLE, S. R. FRANK, W. T. GOODMAN, W. H. WHEELER, JAMES GAMBLE and W. C. JEFFRY, Defendants and Appellees.

**Officers:** SHERIFFS: LIABILITY FOR ACTS OF DEPUTY. A sheriff is responsible for the acts of his deputy in failing to preserve or turn over to the clerk of the court property or funds coming into his hands as the result of garnishment proceedings.

**Same:** GARNISHMENT: RETURN OF DEPOSIT. A sheriff is liable for the wrongful act of his deputy in returning to the garnishee a bank draft deposited with him by the garnishee to cover his liability to the defendant, even though a personal judgment was thereafter rendered against the garnishee by reason of its return.

**Same:** ACTION AGAINST SHERIFF: DEMAND. The fact that the garnishee had left the state was a sufficient showing that the judgment against him was not collectible to render the sheriff liable for the wrongful return to the garnishee of the amount deposited with the deputy. And where it appeared that the deposit had been returned to the garnishee, it was not necessary to make a

demand on the sheriff for the same before bringing suit against him and his bond for the wrongful act.

**Same:** ACCEPTANCE OF DRAFT IN LIEU OF CASH: PRESUMPTION: ESTOPPEL. A sheriff is not bound to accept from a garnishee a check or draft in discharge of his liability to the defendant, but having done so he is in no position to complain that the amount was not in cash; as it will be presumed in the absence of a contrary showing that the draft would have been cashed if presented.

**Same:** DUTY OF SHERIFF: KNOWLEDGE OF GARNISHEE: CONDITIONAL PAYMENT. A garnishee is chargeable with knowledge of the statutory duties of a sheriff, with respect to the disposition of the amount paid him in discharging the obligation of the garnishee to the defendant; and in paying the amount to the sheriff he can impose on him no condition with reference to the disposition of the fund calculated to deter the sheriff in the performance of his legal duty.

**Same:** DUTY OF SHERIFF. In garnishment proceedings the sheriff acts in a ministerial capacity and his relation to the plaintiff is like that of agent; and he can make no arrangement or agreement with the defendant or garnishee, respecting the fund garnished, inimical to the interests of the plaintiff.

**Garnishment:** JUDGMENT: SUFFICIENCY. A judgment entry in garnishment proceedings which recited that the cause came on for hearing on the answer of the garnishee, the defendant not appearing, and that legal notice of the action and of the garnishment had been given by publication, proof of which was on file, and that the garnishee was indebted to the defendant in a stated sum, sufficiently referred to notice of the suit and of the garnishment.

**Same:** Where the attachment defendant was served by publication so that personal judgment could not be rendered against him, the judgment against the garnishee need not refer to the original judgment against the defendant.

**Judgments:** SERVICE BY PUBLICATION. Personal judgment cannot be rendered against a defendant in attachment proceedings who was served by publication, and jurisdiction will not be acquired until it is ascertained that the garnishee is indebted to him.

**Garnishment:** JUDGMENT: SERVICE BY PUBLICATION. A judgment against a garnishee served by publication is not to be regarded as final like a personal judgment; neither is it evidence that any-

thing was owing by him, nor is it a bar to subsequent action, unless satisfied by the garnishee; nor can an action be maintained thereon; and it may be assailed by other attaching creditors or by strangers.

**Same:**     To sustain a judgment against a garnishee there must be a
11     finding that defendant was indebted to plaintiff, and that the garnishee was indebted to the defendant, otherwise the entry will be of no validity. In the instant case the amount owing by defendant to plaintiff was not expressly found, but clearly to be inferred from the findings therein, and is sufficient to authorize judgment against the garnishee.

*Appeal from Page District Court.*—HON. A. B. THORNELL, Judge.

SATURDAY, JANUARY 25, 1913.

ACTION against George Whitmore, as sheriff, and the sureties on his official bond resulted in a directed verdict for him and judgment thereon. The plaintiff appeals.—*Reversed.*

*Earl R. Ferguson* and *C. R. Barnes,* for appellant.

*Denver L. Wilson,* for appellees.

LADD, J.   This is an action against George Whitmore, as sheriff, and the sureties on his official bond for the conversion of a bank draft alleged to have been held by him through a deputy sheriff to satisfy the claim of plaintiff in an action against Walter Brown. It appeared that, in aid of the action against Brown, a writ of attachment issued and was placed in the hands of C. W. Grafton, a deputy sheriff, for levy which was effected February 11, 1911, by serving A. F. Swanson notice of garnishment and taking his answer, which disclosed that he was indebted to Brown in the sum of $300. About a month afterwards, the garnishee, with T. W. Keenan, his attorney, called on the deputy, and, through Keenan, delivered to him a draft or check for $300 on a bank at Essex. In

doing so the deputy sheriff was told not to cash it under any circumstances, nor to turn it over to court, but to hold it "subject to Swanson's orders, because he didn't owe the bill and he didn't intend to pay it"; that "he was going away," with the suggestion added to deposit it in a vault for safe-keeping. On April 12th following, Keenan demanded the draft of Grafton, saying: "It was Swanson's property, and he had a right to take it any time he wanted to." Thereupon the deputy returned the draft, taking the following receipt: "Shenandoah, Iowa, April 12th, 1911. Received of C. W. Grafton, deputy sheriff, draft for three hundred dollars deposited by me with him in the case of W. F. Gutschenritter, plaintiff, v. Walter Brown, defendant, v. A. F. Swanson, garnishee. A. F. Swanson, By Thos. W. Keenan, his attorney."

Prior thereto, and on April 4th, Swanson had filed a formal answer as garnishee, denying any notice had been served on defendant Brown, and setting up that he had turned over to the sheriff or deputy sheriff "the $300 referred to in his answer to said garnishment; that he is not in any way interested in the outcome of the controversy between plaintiff and defendant herein, but asks that his rights, as garnishee, be protected; that the money above referred to be held by the sheriff awaiting the final outcome of this action, and that the said sum, or such portion thereof as is not required to pay whatever indebtedness may be owing from defendant to said plaintiff, be surrendered to said defendant as part payment on the land contract, a copy of which is hereto attached. Wherefore said garnishee prays that the said garnishment be dissolved, and that he be dismissed and given his costs herein; that he be exonerated from all liability to the defendant by reason of said $300 this day paid into court; and that the rights of all parties to said money be determined by this court, and that the rights of said garnishee be protected." This answer was signed by Keenan, as attorney for Swanson, but though offered in evidence, was excluded on objection as incompetent, irrelevant, immaterial, and not binding on de-

fendant. The record discloses that notices were duly served
by publication on defendant Brown, and that in June, 1911,
judgment was entered against the garnishee, who had left
the state since, for $191.76 and $37.35 costs. These facts were
regarded by the court as insufficient to carry the issue as to
the liability of the sheriff to the jury.

I.   The sheriff is by statute made responsible for the acts
of his deputies (section 510, Code; *Headington v. Langland,*
65 Iowa, 277), and it is his duty, aside from serving and

1.  OFFICERS:
 sheriffs: liabil-
 ity for acts of
 deputy.

returning writs and other legal processes, to
perform "such other duties as may be re-
quired of him by law." Section 499, Code. His
bond is the security furnished for so doing. Section 1183, Code.
Upon written direction so to do, the sheriff is required to take
the answer of the garnishee when notice of garnishment is
served; (section 3939, Code), or the garnishee may be required
to appear and answer such questions as may be deemed proper
(section 3941, Code), and the plaintiff, if so disposed, may
controvert the answers given on such examination or in re-
sponse to interrogatories propounded by the sheriff. Section
3945, Code. And, at any time after answer, the garnishee
may "exonerate himself from further responsibility by paying
over to the sheriff the amount owing by him to the defendant
and placing, at the sheriff's disposal, the property of the
defendant, or so much of said debts and property as is equal to
the value of the property to be attached. Section 3944, Code.

If in any of the above methods it is made to appear that
the garnishee was indebted to the defendant, or had any
of his property in his hands, at the time of being served with
the notice of garnishment, he will be liable to the plaintiff,
in case judgment is finally recovered by him, to the full
amount thereof, or to the amount of such indebtedness or
property held by the garnishee, and the plaintiff may have
a judgment against the garnishee for the amount of money
due from the garnishee to the defendant in the main action
or for the delivery to the sheriff of any money or property
in the garnishee's hands belonging to the defendant in the

main action within a time to be fixed by the court, and for the value of the same, as fixed in said judgment, if not delivered in the time thus fixed, unless before such judgment is entered the garnishee has delivered to the sheriff such money or property. Property so delivered shall thereafter be treated as if levied upon under the writ of attachment in the usual manner.

Two other statutes may also be set out:

Section 3902: All money attached by the sheriff, or coming into his hands by virtue of the attachment, shall forthwith be paid over to the clerk, to be by him retained till the further action of the court.

Section 3903: The sheriff shall make such disposition of other attached property as may be directed by the court or judge, and where there is no direction upon the subject, he shall safely keep the property subject to the order of the court.

If, then, the draft came into the deputy sheriff's possession in the garnishment proceedings and in pursuance of section 3944 of the Code quoted above, and is to be regarded as money, it should have been paid to the clerk under section 3902, and, if considered property, should have been "treated as if levied upon under the writ of attachment in the usual manner," to be disposed of as might "be directed by the court or judge," and, in the absence of any such direction, to be "safely kept" subject to the order of the court.

II. Several points raised by appellee first should be disposed of: (a) The plaintiff would have the right to the application of the proceeds of the draft to any amount he might show himself entitled to recover from the defendant Brown, and, if deprived thereof through the wrongful act of the deputy sheriff to his damage, he was entitled to maintain an action therefor. That he was so deprived of the proceeds of the draft was included in the allegations of the petition. (b) As contended, the draft or its proceeds were not condemned to the satisfaction of plaintiff's claim against Brown. This was for the

2. SAME: garnishment: return of deposit.

reason that the deputy, by returning the draft, had rendered this impossible, and the wrongful act in so doing accounts for the personal judgment against the garnishee. Its rendition in no manner waived the wrong of the deputy, but rather defined the extent of the injury by ascertaining what portion of the deposit should have been applied on the judgment defendant's debt to plaintiff. (c) The circumstance that the garnishee had left this state and was residing in South Dakota was a sufficient showing, in the absence of other evidence, that the judgment against him was not collectible in this state. (d) It is also said that the draft was delivered to Grafton individually, and not as deputy sheriff. If this were so, how came he to exact a receipt to himself as deputy sheriff when he returned the draft? Judge Castle testified, when asked what success he had in serving the writ, the deputy answered he had gotten $300. These with other circumstances were sufficient at least to carry that issue to the jury. (e) Nothing could have been gained by demanding of the sheriff the draft before beginning suit. His deputy had returned it to the garnishee long before action was instituted and the latter had left the state. The law does not exact doing useless things, and for this reason no demand was necessary before commencing this action. (f) There is no pretense that the draft belonged to the judgment defendant. It is to be inferred that it was payable to the deputy sheriff or indorsed to him, else there was no occasion for insisting that he should not procure the money thereon from the bank.

It must have been turned over to the officer in lieu of money, and in these days when the bulk of business, official as well as general, is transacted through the execution of checks and drafts, the presumption prevails in the absence of any showing to the contrary, that, had it been presented, it would have been accepted and honored.

Of course the deputy sheriff might have declined to re-

3. SAME: action against sheriff: demand.

4. SAME: acceptance of draft in lieu of cash: presumption: estoppel.

ceive other than cash, but he received the draft without objection and is not in a situation to complain if it is treated as money at its face value.

III.   The statutes heretofore quoted defined the duties of the deputy sheriff in receiving the draft, and the garnishee, in dealing with him, was charged with knowledge of precisely

5. SAME: duties of sheriff: knowledge of garnishee: conditional payment.

what these were.   It was not competent for the garnishee to impose on the sheriff conditions on which he might receive property or money in exoneration of the garnishee's liability, nor does it appear that the deputy undertook to comply with those suggested to him.   Having received the draft, the law prescribed what should be done with it.

In Greenhood on Public Policy, at page 306, the author well says that "any agreement which in itself is, or which contemplates or involves or requires or is calculated to induce, a dereliction or laxity in the performance of public or private duty of men is void."   And such is the doctrine of this court. *Cole v. Parker*, 7 Iowa, 167; *Cass County v. Beck*, 76 Iowa, 487.

The acts of the sheriff in seizing property under a writ of attachment and in the matter of garnishment thereunder are purely ministerial, and therein his relation to plaintiff is

6. SAME: duty of sheriff.

like that of agent.   *Blaul v. Tharp*, 83 Iowa, 665; *Sigler v. Murphy*, 107 Iowa, 128.

It is said in Mechem on Agency, section 590: "Whenever the law imposes upon a public officer the performance of. ministerial duties in which a private individual has a *special* and direct interest, the public officer is liable to such individual for any injury which he may sustain in consequence of the failure or neglect of the officer, either not to perform them at all, or to perform them properly.   In such a case the officer is liable as well for. nonfeasance as for misfeasance or malfeasance."

The theory on which the officer is held as agent is explained thus in 5 Thompson on Negligence, section 6405:

Another distinction exists, in respect of the liability of officers, between those who act directly for the public, and indirectly or mediately for individuals, and those who act directly for individuals, and indirectly or mediately for the public; or, stated another way, between officers who act for the public collectively, and those who act for the public distributively. The officers already instanced—the member of the Legislature, the Governor, the judge, the policeman the road overseer—belong to the former class. To the latter class belong clerks of courts, notaries public, recorders of deeds, sheriffs, constables, coroners when executing civil process, and inspectors of meats. These officers are required by the statutes governing their office, to perform certain designated duties for any individual who may tender to them, or secure the payment of, the statutory fee, and sometimes without this prerequisite. Their relation to an individual, who thus requests them to act, is analogous to a relation resting in contract. The liability of the officer is the same as though he had agreed with the individual to do the particular work for the stipulated fee and then had failed wholly or in part to do it. A privity exists between them, corresponding to what is called privity of contract, and the individual may recover of the officer the damages he has suffered from the failure of the officer to perform the required duty, or his negligence in performing it.

Says Freeman in his work on Executions, section 108:

One inquiry will be answered here, Who is entitled to control the writ? The officer should always bear in mind that the writ is intended for the benefit of the plaintiff, who alone is interested in its enforcement. The interest and wishes of the plaintiff should at all times be respected. . . . But all directions of the plaintiff, not savoring of fraud nor undue rigor or oppression, must be obeyed, or the officer will be held liable for injuries flowing from his disobedience.

For this reason, arrangements made by the sheriff in pursuance of directions or an agreement by plaintiff were carried out in *Bank v. Loomis,* 100 Iowa, 266, and *Buckham v. Wolf,* 58 Iowa, 601.

But we have discovered no authority upholding any
agreement or understanding by the sheriff with the attach-
ment or judgment defendant or a garnishee inimical to the
interests of such plaintiff.  Were this permissible, the ef-
ficiency of the officer would be impaired and the effectiveness
of process destroyed.  He may not contract to neglect or
abandon a legal duty, whether this be due plaintiff as one
of the public or to the public generally.  See *Cole v. Parker,
supra.*  The statute defined precisely what the deputy sheriff
should do upon receiving the draft from the garnishee—i. e.,
if money, pay over to the clerk of the court; if property,
safely keep until otherwise directed by the court.  He did
neither, and therein was derelict in the performance of his
duty.  In view of what has been said, it seems needless to
add that evidence of the conditions sought to be imposed on
the deputy sheriff in delivering the draft were inadmissible,
regardless of the purpose which actuated him.  What the
garnishee may have said in nowise impaired the deputy's duty
with respect to the draft, and though not bound to exonerate
himself as garnishee by paying over to the sheriff, having
elected so to do, he is conclusively presumed to have done
so with knowledge that the sheriff, upon receiving the same,
would dispose thereof precisely as directed by statute.

IV.   One of the grounds of the motion to direct a ver-
dict for defendant was that plaintiff "failed to show the
existence of a valid judgment or order or finding against the
principal defendant Brown, or the amount
or extent of his indebtedness, if any, to the
plaintiff," and also that no notice of the
garnishment proceedings had been given.  The only judg-
ment entry introduced in evidence reads:

7. GARNISHMENT: judgment: suf- ficiency.

W. F. Gutschenritter, Plaintiff, v. Walter Brown, De-
fendant, v. A. F. Swanson, Garnishee, Walter Brown, De-
fendant.  No. 414.  This cause coming on for hearing on the
answer of A. F. Swanson, garnishee, heretofore filed, and
Ferguson & Barnes, attorneys for plaintiff, being present
in court, and T. W. Keenan, attorney for said A. F. Swan-

son, garnishee, being present in court, but the defendant, Walter Brown, appearing not nor any one for him, and it appearing to the court that legal notice of the pendency of this suit and of the garnishment of the said Swanson as the supposed debtor of the defendant had been given, and proof of publication of said notice on file with the clerk of this court, and it further appearing from the answer of said garnishee that he is indebted to the defendant Walter Brown in the sum of $300, all of which is shown to the satisfaction, and the court being advised in the premises, it is ordered and adjudged by the court that the plaintiff, W. F. Gutschenritter, have and recover judgment against the said A. F. Swanson, garnishee, in the sum of $191.76, at 6 per cent. interest thereon from this date, and the costs of this suit, together with the costs of the original suit of W. F. Gutschenritter v. Brown, taxed at $37.35. George H. Castle, Judge.

The evidence disclosed that defendant Brown was duly served with notice by publication, and the recital in the entry, though singular, sufficiently referred to both the notice of the pendency of the suit and that of the garnishment proceedings.

It is to be observed, however, that the entry contains no express finding that anything was owing plaintiff by Brown, nor does it refer to any judgment in the original action against Brown. Section 3952 of the Code declares that, "when judgment is rendered against a garnishee, the same shall distinctly refer to the original judgment." This is for the reason that the order on the garnishee to pay is dependent on the judgment against the defendant, in the absence of which the garnishee cannot be required to pay.

8. SAME.

As service on the defendant was by publication only, personal judgment might not have been entered against him, and the court did not acquire jurisdiction until it was ascertained that the garnishee was indebted to him. In some states personal judgments are entered against defendants on notice by publication, to be satisfied by special execution only, and in others the

9. JUDGMENTS: service by publication.

judgment against the garnishee merely includes a finding of the amount owing by the debtor to plaintiff, and direction for the application of the proceeds of the levy of the attachment.

The form of entries is not so material, as judgment on such service is not regarded as final, like a personal judgment (*Kimball v. Nichol*, 58 Ga. 175) nor is it evidence of anything owing or a bar against subsequent action, unless satisfied by the garnishee.   *Conwell v. Thompson*, 50 Ill. 329; *Bliss v. Heasty*, 61 Ill. 338; *Jackson's Appeal*, 2 Grant, Cas. (Pa.) 407.

10. GARNISH-
MENT: judg-
ment service
by publica-
tion.

An action cannot be maintained thereon. *Miller v. Dungan*, 36 N. J. Law, 21. And it may be assailed by other attaching creditors or strangers. *Meyer v. Gage*, 65 Iowa, 606.

Two requisites are universally held to be essential, however, (1) that defendant be found to be indebted to plaintiff; and (2) that the garnishee owe the defendant, and, unless these appear in the judgment entries or entry, it is of no validity.   2 Shinn on Attach. & Gar. section 681.   Where there is personal service of the original notice, the statutes undoubtedly contemplate a judgment against the defendant and a separate judgment entry against the garnishee, referring therein to the original judgment; but when jurisdiction over defendant personally is not acquired, and is exercised against defendant's property only through service of the original notice by publication, all the court may do is to condemn the property seized under the writ of attachment or in the hands of the garnishee to the satisfaction of the indebtedness found to be owing plaintiff by defendant, and there is no necessity for two judgment entries to accomplish this.   The jurisdictional facts, as well as the findings of the amount owing by defendant to plaintiff, may be recited in the judgment entry condemning the attached property or in the judgment against the garnishee for his debt to the defendant, or enough thereof to satisfy the indebtedness found to be owing plaintiff by the defendant, and

11. SAME.

this for the reason that in such a case but one judgment is or can be rendered.

Reverting to the judgment entry set out, it will be observed that everything essential to its validity is contained therein, with the possible exception of a finding of the amount owing by defendant to plaintiff. That is not expressly found, but is clearly to be inferred therefrom. Manifestly the amount of the judgment was fixed at less than the indebtedness of the garnishee to defendant, for that only such amount was owing by the latter to plaintiff, and, as the court could enter judgment against the garnishee only upon a finding that a like amount was owing plaintiff, it is to be inferred that the court actually found defendant to have been indebted to plaintiff in the sum for which judgment was entered against the garnishee. No objection to the judgment entry was interposed, and, even though the same may be somewhat informal, it was subject to correction on motion of any of the parties thereto. This being so, the sheriff is not in a situation to complain of such informality in an action against him for damage consequent on his wrongful act in preventing the satisfaction of plaintiff's claim.

For the reasons stated, the judgment was not void, and the court erred in directing the jury to return a verdict for defendant. It should be added that there was also error in not admitting the garnishee's answer in evidence, as bearing on the judgment entry, if for no other reason.—*Reversed.*