[No. 22050. Department One. October 19, 1929.]

J. T. EPLEY, *Appellant*, v. L. L. HUNTER *et al.*, *Respondents.*[1]

[1]Reported in 281 Pac. 327.

164

*O. A. Tucker* and *P. C. Kibbe,* for appellant.

*Bigelow & Manier* and *Yantis & Brodie,* for respondents.

Tolman, J.—Appellant, as plaintiff, brought this action to recover upon four causes of action growing

out of the alleged wrongful or excessive levy of certain writs of attachment. There is no claim that the attachment writs were wrongfully issued, but all of the causes of action are based upon the things done or permitted to be done by the sheriff while acting under authority of the writs.

Trial was had to a jury, and, at the close of plaintiff's case, a nonsuit was granted as to the defendants who were sureties on the attachment bonds.

After all of the evidence was introduced, the cause was submitted to the jury and a verdict returned against respondents Hunter, who were plaintiffs in the attachment suits, and against the sheriff, in the sum of $11,500. Thereafter, a motion for judgment *non obstante veredicto* was interposed and granted, and from that judgment, the plaintiff has appealed.

The errors assigned are based upon the granting of the nonsuit as to the sureties on the attachment bond, the entry of the judgment *n. o. v.*, and the refusal to enter judgment on the verdict.

As to the first question, little need be said. The attachment bonds were in the statutory form, conditioned for the payment of all costs and damages, "should the same be wrongfully, oppressively, or maliciously sued out." There is no allegation or proof of any wrongful suing out, and it needs no argument to demonstrate that the sureties on an attachment bond are not guarantors of the acts of the sheriff under the writ. The nonsuit as to the sureties was properly granted.

In the four causes of action, appellant seems to claim five items of injury growing out of the alleged wrongful acts of the sheriff: (1) Damages to personal property while in the custody of the sheriff; (2) damage to real property wrongfully seized; (3) destruction of his business; (4) destruction and loss of the

books of account and records; and (5) failure to redeliver property to the appellant or wrongful delivery thereof to third persons.

There are several items of proof, each having some bearing upon more than one item of injury, and we can best discuss the issues by setting out and considering what the jury may have found that the sheriff did, or permitted to be done.

It appears that appellant had, for some years, been carrying on an automobile, an automobile repair, and garage business in the city of Olympia in a building situated upon real estate of which he had possession by virtue of an executory contract to purchase on deferred payments. He had a considerable stock of automobile parts, accessories, supplies, gasoline, gasoline tanks, tools, fixtures, furniture, and, perhaps, both new and second hand automobiles. The value of the personal property is alleged to have been more than ten times the amount of the claims on which the attachment writs issued. The sheriff apparently levied upon, and took into his possession, not only all of the personal property in appellant's place of business, but also seized and took into his possession the building which was a part of the real estate. No attempt appears to have been made to segregate and remove a reasonable amount of the property or segregate and retain within the building in charge of a custodian, or otherwise, any such reasonable amount of the property bearing some relation to the amount claimed to be due in the attachment suits, which aggregated less than $2,000. No attempt appears to have been made to comply with the statute, Rem. Comp. Stat., § 655, which directs a levy upon property as nearly as possible fifty per cent greater in value than the amount claimed to be due.

Not only this, but the sheriff, as shown by his re-

turn, caused or permitted the business to be carried on while he was so in possession, and of the merchandise held under the levy sold for cash, he received and retained, according to his return, $242.68 in money, though the deputy in charge testified to a greater amount. There was also proof tending to show that the sheriff negligently caused or permitted the parts and accessories to become mixed and their markings destroyed, and a large portion thereof lost and damaged by the elements while in his possession, and that books and records belonging to the business were lost and destroyed. Still further, there was evidence to go to the jury tending to show that, while the sheriff was in possession of the building, line shafting and partitions were torn out and a remodeling of the building was begun. All of this tends to show an amazing disregard on the part of the sheriff of his duties and of the rights of the appellant, so much so that if the other necessary elements appear, there was evidence amply sufficient to take the case to the jury.

As to damages to the personal property while in possession of the sheriff and failure to redeliver, which may be treated together, we find some general and not very satisfactory testimony as to the value of the personal property as a whole when seized by the sheriff, but no testimony of any character from which the jury could find what specific parts thereof were damaged, what specific parts thereof, if any, were not tendered or returned, or the lessened value of the whole which was occasioned by damage or failure to return. In other words, to prove damages in such a case as this, there must either be evidence of the value of the whole, when taken, and evidence of the value of what was returned, when returned, which, deducted from the first amount, would show the loss; or, there must be evidence of the loss or damage to specific

parts of the whole, together with evidence of the value of the parts lost and the extent of the lessened value of the parts damaged. We find no testimony tending to establish any loss to appellant under either rule. Indeed, it appears that on the day appellant paid the judgments in the attachment suits, he gave a bill of sale covering apparently all, or substantially all, of this personal property to one Enbody, which recites a consideration of ten dollars and other good and valuable considerations. So far as we can find from the abstract, no testimony was given that appellant received less for the property by reason of what the sheriff had done or permitted. However wrongful the sheriff's acts, there can be recovery under the rule in this state only for the monetary loss suffered, and there being no evidence of such a loss or the extent thereof, there was nothing to go to the jury on this issue.

■ All of what we have just said applies equally to the alleged destruction and loss of books of account and records. There was some general testimony from which the jury might have found that the sheriff, acting in entire disregard of appellant's rights, seized or molested and interfered with appellant's books and papers, but what, if any, were lost, or how appellant suffered any loss which can be measured in money from the sheriff's acts in this respect, is left entirely to the imagination.

■ Destruction of appellant's business. There is testimony showing that appellant had an established and profitable business which for some years had netted him an annual return of $10,000. The jury may have found, indeed, it indisputably appears, that the sheriff unjustifiably seized the whole business on writs calling for comparatively small amounts; while, if he had acted within the law, he might have properly levied the writs by seizing and removing a reasonable

amount of personal property without interference with the business. There is evidence that the sheriff excluded appellant from his business and unlawfully undertook to run it himself. The very fact of such a seizure is, and must be, a damage to a going commercial business, but of course the injured party must, so far as reasonably possible, minimize his damages. That he succeeded in leasing the building and premises in which the business was carried on, should be considered, as also that he sold the personal property later on when it was released by the sheriff, and so far as he thereby minimized his damages these facts should be reflected in the verdict; but the sheriff's wrongful act being sufficiently established to go to the jury, together with evidence, as we have seen, that the business was well established and profitable, the extent of the lessening of the damages by the leasing of the building and the sale of the stock would seem to be matters of defense. Indeed, the leasing of the building and the sale of the personal property was shown by respondents as a part of their defense.

Nor can we see that the situation is materially affected by appellant's failure in the attachment actions to press to a successful conclusion his motion to require the sheriff to reduce his levy. Such a motion was made, but was never passed upon by the trial court and the judgments in the attachment suits are in the usual form establishing and continuing the liens of the attachments.

After a wrong had already been done by seizing appellants entire business, a subsequent release of a part could hardly be expected to repair the full damage, and in any event, we think it would be going too far to say that, because the court, with at least the passive consent of the respondents, refused to hear and pass upon the matter before the trial on the merits, the judg-

ments in the attachment suits were an adjudication of the issue thus raised. When judgment was entered, the judgment creditor was entitled to both special execution against the attached property and general execution against any property of the judgment debtor not exempt. Must the judgment debtor then having the money to pay, refuse to do so and prolong the litigation by appeal in order to avoid the rule of *res judicata?* We are not convinced that such a holding would be just under the conditions shown here.

■■ Damage to real property. That possession of the real property was wrongfully taken by the sheriff must be conceded. In *State ex rel. Oatey Orchard Co. v. Superior Court, ante* p. 10, 280 Pac. 350, recently decided by this court, it was held that such an interest in real property as that held by the appellant so far partakes of the nature of real estate as to call for a levy in the manner provided by statute for reaching real property. A levy upon real estate does not permit the sheriff to take possession, and no such levy was here made until several days after the sheriff had taken possession. Moreover, even if the interest in the real property could be considered personalty, the jury could well have found that there was ample property of a portable nature which the sheriff might have seized and removed without substantial interference with the business or with the building; but in any event, whether the levy was lawful or unlawful, reasonable or unreasonable, the sheriff had no right or authority to make or permit to be made changes and alterations in the building while it was in his possession.

Perhaps the greater weight of the evidence is to the effect that the alterations, or the greater part thereof, were made after the sheriff ceased to have possession; but there is sufficient direct evidence, to the

effect that these alterations began while the sheriff was in the full and sole possession, to carry the case to the jury. True, these alterations may have been commenced after appellant executed the lease of the premises to Enbody for a term of fifteen years. If so, the right to recover for the lessened rental value, if any, for the term of the lease would be in the lessee, but appellant, as lessor, would have the right, upon the termination of the lease by lapse of time or broken conditions, to receive back his building in the condition it was when the lease was made, wear and tear excepted. It would seem, therefore, that, as to many of the alterations of a permanent character which were testified to, appellant, having given evidence of what it would cost to restore the building to its original condition, had thus presented a question for the jury.

■ Finally, respondents seem to contend that respondents Hunter, plaintiffs in the attachment suits, in any event are not liable for the unlawful acts of the sheriff.

As we read the testimony of the sheriff himself, introduced by respondents in their own behalf, it shows that the sheriff was in communication with the attorneys representing the attaching creditors at the time he made the levy, advised them of conditions and sought their directions and apparently acted thereon. We think there was enough to warrant the jury in finding that the sheriff acted in all he did under the directions of the attaching creditor.

There being evidence upon two causes of the action sufficient to go to the jury, it was error to grant judgment, *n. o. v.*

Reversed with instructions to pass on the motion for a new trial.

MITCHELL, C. J., PARKER, MILLARD, and BEALS, JJ., concur.