[No. 30496.   Department One.   July 8, 1948.]

FRED MARSHALL et al., *Appellants*, v. ESTATE OF E. W. CHAP-MAN, *deceased, et al., Defendants*, HARLAN S. CALLAHAN, *as Sheriff of King County, Respondent.*[1]

[1] Reported in 195 P. (2d) 656.

138

*Brightman & Roberts* and *Donald G. Holm,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Frederick V. Betts,* for respondent.

HILL, J.—The appellants sued the estate of E. W. Chapman, deceased, and respondent Harlan S. Callahan as sheriff of King county, alleging in their amended complaint that during the time the sheriff had possession of the dairy herd of the appellants, under a writ of attachment wrongfully sued out by E. W. Chapman, the cattle were cared for

". . . in such a careless and negligent manner that their value was greatly diminished and that the reasonable and just damages due to the plaintiffs [appellants] was and is in the sum of $3552.53."

To this amended complaint, the administratrix of the estate of E. W. Chapman, deceased, demurred. The demurrer was sustained, and the order sustaining the demurrer also abated and dismissed the action as to the estate. This order was entered on November 20, 1947, and notice of appeal was given, but no bond for costs on appeal was ever filed. Since the appeal from this order was not perfected, appellants' assignment of error that the lower court erred in holding that the appellants' cause of action abated with the death of E. W. Chapman cannot be considered.

The sheriff, the sole respondent here, also demurred to the amended complaint, and his demurrer likewise was sustained,

". . . for the reason that the judgment entered in Superior Court cause No. 375202 for King County previously decided the matters pleaded in the above entitled action and that the judgment in said cause is res adjudicata of the plaintiffs' [appellants'] rights herein . . ."

*Res judicata* usually is a defense to be pleaded and proved. *Witte v. Old Nat. Bank,* 29 Wn. (2d) 704, 189 P. (2d) 250; *Jackson v. McAuley,* 13 Wash. 298, 43 Pac. 41; *Lowman v. West,* 8 Wash. 355, 36 Pac. 258; 3 Bancroft on Code Pleading 2758, § 1649. But, since the entire file in King county superior court cause No. 375202, hereafter referred to as cause No. 375202, was by reference made a part of appellants' amended complaint, it was permissible for the court below to examine that file; and if it could be said from an examination thereof that the judgment in that cause was *res judicata* of the appellants' rights in the present case, the

demurrer was properly sustained. *Lea v. Young*, 168 Wash. 496, 12 P. (2d) 601.

It appears from the files in cause No. 375202 that E. W. Chapman sued the appellants for one thousand dollars on a promissory note and caused a writ of attachment to be issued, and that the sheriff executed the writ by taking possession of eleven cows, seven yearlings, and one bull belonging to the appellants, and six cows which Chapman had sold to them on a conditional bill of sale.

The appellants, by way of answer and affirmative defense, alleged that the note was part of the purchase price for the six cows last referred to, which had been represented to them by Chapman to be good dairy cows and free from disease. They alleged further that those cows had mastitis and had been exposed to Bang's disease, and that some of them, after delivery, had been quarantined because of that disease; that the consideration for the note had wholly failed, and that they had tendered the six cows back to Chapman.

The appellants further, by way of cross-complaint (verified August 9, 1946), alleged that E. W. Chapman had wrongfully and maliciously secured the issuance of a writ of attachment and caused their dairy herd to be attached thereunder, for the purpose of preventing, and which did prevent, its sale at a public auction which had been advertised for the following day, and that the damages resulting from these wrongful and malicious acts amounted to $8,595. Only two of these items of damage need concern us: (1) $2,395, being the value of ten (should have been eleven) cows, seven yearlings, and one bull which the

". . . defendants [appellants here] have been deprived of and have wholly lost and lost the value thereof through said wrongful and malicious attachment";

and (2) $250, being the expenses incurred in connection with the auction sale referred to, and made up of $100 paid to the auctioneer employed to conduct the sale, $50 for hired help preparing for the sale, and $100 for additional costs of the sale.

E. W. Chapman, the plaintiff in that action, filed his reply and answer to the cross-complaint, the latter being a general denial.

That cause came on for trial on February 26 and 27, 1947, and the trial court held with the appellants as to their affirmative defense that there had been a failure of consideration, and ordered the note to be canceled; and it was adjudged that the plaintiff, E. W. Chapman, take nothing by his action except the right to retain the six cows for which the note had been given. The trial court also found that E. W. Chapman had secured the writ of attachment wrongfully and without cause and for the purpose of harassing and maliciously injuring the appellants and preventing them from selling their dairy herd at the public auction referred to. The only finding of damage with reference to the cross-complaint was finding No. 18, which read as follows:

"That defendants had made expenditures and incurred indebtedness in making the arrangements and providing for the holding of the public auction hereinbefore mentioned and described, and had made expenditures for help and in the providing of food and accommodations for those attending and expecting to attend said auction, and for the providing of an auctioneer in the amount of $250.00."

The court's conclusion of law No. 2 read as follows:

"That defendants are entitled to judgment against plaintiff for the amount of $250.00 damages for said wrongful attachment and wrongful garnishment."

Paragraph No. 3 of the judgment read as follows:

"That defendants have judgment against the plaintiff for the sum of $250.00."

There is no showing in the record that this judgment was ever satisfied.

The respondent here takes the position that the $250 judgment was compensatory damages for the taking of the dairy herd under the wrongful attachment. It is obvious from a study of the record that conclusion of law No. 2 and the judgment for $250 had their basis in finding No. 18, and that they covered only the damages therein referred to. Although appellants in their cross-complaint had asked for

$2,395 because they had been "deprived of and have wholly lost the value thereof [of the dairy herd] through said wrongful and malicious attachment," it is apparent that the trial court, in that action, awarded the appellants here no damages for such deprivation and loss, but dissolved the attachment and ordered the sheriff to deliver to them the eleven cows, seven yearlings, one bull, and "all of the increase of said animals since the levy of said attachment." It is equally apparent that the issues raised by the appellants' cross-complaint in cause No. 375202 had to do with damages occasioned by E. W. Chapman's action in wrongfully and maliciously securing a writ of attachment and having the dairy herd attached thereunder; whereas the gravamen of the action in the present case is an entirely different tort, *i.e.*, the negligence of the sheriff in caring for the dairy herd during the period he had it in his possession, to wit, from July 15, 1946, until March 8, 1947.

We have held that a person who has been the victim of a wrongful attachment is not required to litigate the matter of whether he has been damaged thereby or the extent of his damages, in the action in which the attachment is issued. *Tacoma Mill Co. v. Perry*, 32 Wash. 650, 73 Pac. 801; *Veysey v. Thompson*, 49 Wash. 571, 95 Pac. 1096; *Elder v. Massachusetts Mortgage Co.*, 159 Wash. 450, 293 Pac. 711, 85 A. L. R. 638. The respondent says, however, that these holdings are not applicable to the present situation because the victims of the wrongful attachment did litigate the character and extent of certain of their items of damage in the action in which the attachment was issued, that is, in cause No. 375202, and that, consequently, the propriety of their procedure in so doing should not here be questioned.

We come now to a consideration of the amended complaint, the sufficiency of which is here challenged. It does not state the character, the time, or the place of the sheriff's negligence. It does not state how or why the value of appellants' dairy herd was diminished. We cannot imagine a more delightfully general allegation upon which to base an action for damages than the one set out on the first page of this opinion.

■ We said, in *McMahan v. Mut. Benefit Health & Accident Ass'n,* 28 Wn. (2d) 202, 182 P. (2d) 4:

"In conformity with the provisions of the first of these statutes [Rem. Rev. Stat., § 285], this court has from early days consistently held that, in determining whether or not a complaint is sufficient as against a demurrer, the pleading will be liberally, not strictly, construed, and that 'even inferences from averments amounting to mere conclusions of law' will be construed in favor of the pleader. [Citing cases.]"

■ Construed by that standard, if the allegations of the amended complaint are true the appellants have a cause of action against the sheriff for his negligence in caring for the appellants' dairy herd. 47 Am. Jur. 866, Sheriffs, Police, and Constables, § 60; *Epley v. Hunter,* 154 Wash. 163, 281 Pac. 327. See, also, *State to Use of Henderson v. Clark,* 41 Del. (2 Terry) 246, 20 A. (2d) 127, 138 A. L. R. 704, and extensive A. L. R. note (p. 710) as to duty of the sheriff or other officer relative to care of property levied upon by him.

■ It is alleged that the issuance of the writ of attachment was wrongful and malicious, which would make the person who caused the writ to be issued also liable to the owner for damages occasioned by the sheriff's negligence, not as a joint tort feasor, as is sometimes said, but on the theory of *respondeat superior. Kerr v. Mount,* 28 N. Y. 659; *Blaul & Sons v. Tharp & Co.,* 83 Iowa 665, 49 N. W. 1044; *Tyler v. Mahoney,* 168 N. C. 237, 84 S. E. 362.

Our case of *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, makes clear the distinction between the liability of joint tort feasors and the liability of one who is legally responsible for the tort of another on the theory of *respondeat superior.* It is there said:

"It must be borne in mind, however, that there are wide distinctions between the ordinary action for injuries, where all of the defendants participated in the wrongful act which caused the injury, and actions like the one before us, where one is liable because he committed the act and the other by operation of law, both with respect to the relations of the defendants to each other and to the injured person. Joint tort feasors are liable to the injured person (other than

that he may have but one satisfaction), as if the act causing the injury was the separate act of each of them, and they have, except in certain special cases, no right of contribution among themselves. But the defendants in this character of action are in no sense joint tort feasors, nor does their liability to the plaintiff rest on the same or like grounds. The act of an employee, even in legal intendment, is not the act of his employer, unless the employer either previously directs the act to be done or subsequently ratifies it. For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he committed the act which caused the injury, while the employer is liable, not as if the act was done by himself, but because of the doctrine of *respondeat superior*—the rule of law which holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment and engaged in his master's business. The primary liability to answer for such an act, therefore, rests upon the employee, and when the employer is compelled to answer in damages therefor he can recover over against the employee. *Oceanic Steamer Nav. Co. v. Compania Transatlantica Espanola,* 134 N. Y. 461 (31 N. E. 987, 30 Am. St. Rep. 685); note to *Village of Carterville v. Cook,* 16 Am. St. Rep. 248; 1 Shearman & Redfield, Negligence (5th ed., § 242); 2 Van Fleet, Former Adjudication, p. 1162.

"So, where the employer is sued separately for the wrong, he can bind the employee in any judgment that may be obtained against him, by notifying the employee to come in and defend the action."

We are here concerned only with the question of whether or not there is any bar apparent from the record against proceeding with the action against the sheriff; the question of whether or not there is any bar against proceeding with the action against E. W. Chapman or his estate is not before us.

The respondent contends that cause No. 375202 is *res judicata* of this action, or that, in any event, there has been a splitting of a cause of action, with both cause No. 375202 and the present action being for damages for the same wrong.

When the appellants filed their cross-complaint in cause No. 375202 and raised the issue of damages for wrong-

ful attachment against E. W. Chapman, the sheriff was not made a party to the proceeding. Identity of parties, an essential to *res judicata*, is therefore lacking.

The respondent contends that the sheriff could or should have been made a party to that proceeding. If we were content to rest this decision upon narrow grounds, we would need only to point out that there is nothing in the record before us which discloses when the sheriff committed the tort for which he is being sued. For aught we know, it may have been after the trial in cause No. 375202 and before the return of the cattle, a matter of some nine days.

However, the decision can be placed on the broader ground that, even if the appellants could or should have sued Chapman in cause No. 375202 for the damages suffered by reason of the sheriff's negligence (and we do not so hold), they had the right to sue Chapman and the respondent separately and were not compelled to join them in that action. *Western Bond & Mortgage Co. v. Chester,* 145 Wash. 81, 259 Pac. 13; *All v. Delaware & Hudson R. Corp.,* 29 N. Y. S. (2d) 439, 176 Misc. 977. In fact, *Sipes v. Puget Sound Electric R.,* 54 Wash. 47, 102 Pac. 1057, in which an action against an interurban railway was dismissed because the jury brought in a verdict of nonliability as to the employee whose negligence was alleged to have caused the plaintiff's injuries, goes so far as to suggest the inadvisability of such a joinder, saying:

"If plaintiffs will persist in joining the servant with the master in actions of this kind, they must recover against the servant or suffer the consequences attendant upon their failure so to do."

Since the appellants were under no obligation to make the sheriff a party in cause No. 375202 and had the right to proceed separately against him, and since this is the first attempt to recover damages from the sheriff for his own tort, it is clear that, if the suit against him is to be barred by the record in cause No. 375202, it must appear therefrom that the appellants have already been compensated for the sheriff's tort. Even a judgment against Chapman for damages for that tort would not be sufficient to

constitute a bar to a suit against the sheriff; it would be necessary to show that the judgment against Chapman had been satisfied. As stated in *Larson v. Hodge,* 100 Wash. 419, 171 Pac. 251, that is the rule as to separate judgments against joint tort feasors. We there said:

"It is too well settled to need citation of authority that joint tort feasors may be sued either jointly or severally, and that a judgment against one is not a bar to suit against another. While plaintiff can have but one satisfaction for her wrong, yet, as between Anderson and the sheriff, neither can set up anything less than a satisfaction of a judgment against the other as a bar to an action."

The rule is no different where one of the parties liable is an active wrongdoer and the other is liable on the theory of *respondeat superior*, except in those cases where the first action is against the actor. If the result is a judgment for the actor, it bars an action against the person derivatively liable because his responsibility is necessarily dependent upon the culpability of the actor. *Doremus v. Root, supra.* By the same reasoning, the person derivatively liable might rely upon the judgment against the actor as being the limit of his liability. 52 Am. Jur. 466, Torts, § 129. None of these variations of the rule as to judgments against joint tort feasors could be of any assistance to the respondents, who are relying upon a claimed adjudication against one who is only derivatively liable for the sheriff's tort.

There is not the slightest intimation in cause No. 375202 that appellants have ever been compensated for the damages sustained by reason of the sheriff's negligence.

██ The rule against splitting causes of action has no bearing here. The damages against Chapman in cause No. 375202 were for a wrongful and malicious attachment. This action against the sheriff for his neglect in caring for the attached dairy herd would lie even though the attachment had been entirely rightful and proper. As to him, the allegations concerning wrongful and malicious attachment were surplusage.

The judgment of dismissal against the sheriff is reversed, with directions to overrule the sheriff's demurrer to the amended complaint.

MALLERY, C. J., MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.

[1]Reported in 195 P. (2d) 634.