**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PACIFIC 5000, L.L.C., a Washington Limited Liability Company; and PACIFIC 5000 LLC, a Washington Limited Liability Company;<br><br>Respondent,<br><br>v.<br><br>KITSAP BANK, A Washington Bank Corporation; JAMES LEON DAVIS, a.k.a. JIM DAVIS and JANE DOE DAVIS, husband and wife, and the marital community comprised thereof,<br><br>Respondents, | No. 55558-1-II<br><br><br><br>PUBLISHED OPINION |

MAXA, J. – Pacific 5000, LLC (Pacific) appeals the trial court's dismissal of its lawsuit against Kitsap Bank and James Davis under CR 12(b)(6) and the imposition of CR 11 sanctions based on a finding that the lawsuit was baseless.

In its complaint filed in 2020, Pacific alleged that Kitsap Bank's predecessor, Fife Commercial Bank (FCB), and Davis, FCB's president, conspired with Carl Haglund to engineer a complicated scheme that forced Pacific to sell commercial property Pacific owned for below its market value. Pacific asserted claims for violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and conspiracy in restraint of trade.

Pacific previously had filed a lawsuit against Haglund, asserting various causes of action including CPA violations and conspiracy in restraint of trade. In 2017, Pacific obtained a

No. 55558-1-II

judgment against Haglund for $313,447, which was the equity that Pacific had in the subject property in May 2015 when Haglund's malfeasance began. That amount was trebled to $940,341 under the statutory trespass statute and under the CPA provision prohibiting a conspiracy in restraint of trade. Haglund subsequently satisfied the judgment.

The trial court in the Haglund lawsuit found that Pacific's property was worth $575,000 on May 2015. But in November 2018 the property sold for $1,075,000. Pacific now seeks to recover from Kitsap Bank and Davis the property's appreciation in value above the $313,447 previously recovered.

We hold that (1) the judgment in the Haglund lawsuit and Haglund's satisfaction of that judgment precludes Pacific from claiming additional damages from Kitsap Bank and Davis based on postjudgment appreciation of property value, and (2) Pacific cannot recover the same treble damages from Kitsap Bank and Davis that it already recovered from Haglund. However, we hold that the trial court erred in imposing CR 11 sanctions against Pacific because Pacific's claims were not baseless.

Accordingly, we affirm the trial court's dismissal of Pacific's complaint against Kitsap Bank and Davis, but we reverse the trial court's imposition of CR 11 sanctions against Pacific.

## FACTS

*Background*

Because this case was dismissed under CR 12(b)(6), the background facts are recited as alleged in Pacific's complaint. Most of the same facts are contained in the findings of fact entered in the Haglund lawsuit, which was incorporated by reference and attached as an exhibit to the complaint.

2

No. 55558-1-II

In 2002, Pacific owned an 11-unit apartment building in Tacoma. To finance the building, Pacific took out a loan with FCB that was secured by a deed of trust against the property. Pacific's owner and manager, George Humphrey, personally guaranteed the loan.

In 2012, Pacific had to remove its tenants and renovate after a break-in occurred. After repairs were done, Pacific chose not to re-lease the building pending further developments. Pacific continued to make its monthly payments against the loan during and after repairs. By June 2015, the total balance on the loan was $232,476.64.

In May 2015, FCB entered into an agreement with Kitsap Bank in which FCB would be acquired through a merger. Davis, FCB's president, had millions of dollars riding on a successful merger. Because of the merger, FCB was anxious to get any nonconforming loans off its books, which included Pacific's non-income producing property. Davis contacted another FCB borrower, Haglund, about acquiring the bank's note and deed of trust.

On May 20, Haglund entered the property without permission from Humphrey, ostensibly as part of his due diligence before acquiring the note and deed of trust. When FCB learned of the trespass, it implicitly encouraged Haglund to trespass again at his own risk.

Haglund trespassed on the property a second time during the week of May 25. He sabotaged the building's electrical system by cutting holes in the ceiling of each room and severing electrical conduits and by damaging several electrical panels. He also cut holes in the dry wall between apartment units so he could gain access to other units and commit widespread damage. Even though FCB was aware that Haglund had entered the property a second time, it did not inform Humphrey of Haglund's trespass.

On June 3, Haglund entered into an agreement with FCB to acquire Pacific's note and deed of trust for $232,476.64. Haglund made a payment of $50,000 and FCB financed the rest

3

No. 55558-1-II

of the transaction. And FCB retained power to collect on the note and to foreclose on the deed of trust. Davis informed Humphrey that FCB had sold the note to Haglund, but he did not tell him that FCB remained a secured party.

After acquiring the note, Haglund met with Humphrey to discuss his interest in buying the building. Humphrey offered to sell the property in exchange for a cash payment of $70,000, assumption of tax liability, and satisfaction of the existing debt even though the building was worth substantially more.

Haglund arranged a walkthrough of the building with Humphrey. At this time Humphrey discovered the damage done to his electrical system and walls, and Haglund acted surprised at the damage. Haglund used this damage to negotiate the price down by $20,000. The parties orally agreed on a deal for Pacific to sell the property for $50,000, assumption of tax liability, and satisfaction of the existing debt, and Humphrey agreed to give Haglund immediate possession.

Humphrey and Haglund interacted with each other consistent with an agreement in place and Humphrey stopped making payments on the loan. In September, Haglund told Humphrey he was having second thoughts and was facing pressure from FCB to get the loan paid off. But this was untrue, and FCB said nothing to correct the misrepresentation. For two months, Haglund attempted to back out of the deal. Haglund impliedly threatened to put the property into foreclosure.

In January 2016, Haglund issued a notice of default, the first step leading to a foreclosure. A notice of foreclosure and a notice of trustee's sale were issued in February, scheduling the trustee's sale for May.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55558-1-II

Before the scheduled trustee sale, Haglund attempted to convince a prospective buyer not to bid and then offered the prospective buyer consideration if he would not bid. At the scheduled trustee sale, several prospective bidders appeared. Haglund disparaged the condition the property and actively discouraged people from bidding. He also falsely stated that there was litigation pending against the property. Davis and FCB's legal counsel were present and witnessed Haglund's comments without stopping him. Haglund then postponed the trustee's sale over the objections of a bidder.

In the aftermath of the foreclosure process, in June 2016 Pacific sold the property to an investor named Daniel Dickinson under business compulsion. Davis and FCB participated in this coerced transaction, even though they were aware of the chilled bidding process that caused the coercion.

*Haglund Lawsuit*

In April 2016, Pacific had filed a lawsuit against Haglund. After a bench trial, the trial court found Haglund liable under multiple theories, including statutory trespass, violation of the CPA, and conspiracy in the restraint of trade.

The trial court found nine different unfair and deceptive practices in which Haglund violated the CPA. The court also found there was a conspiracy in restraint of trade between Haglund and FCB based on FCB's conduct throughout this process.

The trial court heard considerable evidence on the value of the property. The court found that the value of the property was $575,000 in June 2015 and $650,000 in May 2016. The court determined that the measure of damages was Pacific's loss of its equity in the property because of Haglund's conduct. The court found that Pacific's equity as of May 2015, when the first act of malfeasance occurred, was $313,447.21.

5

No. 55558-1-II

The trial court decided that Pacific was entitled to treble damages both under the statutory trespass statute, RCW 4.24.630, and because of Haglund's conspiracy in restraint of trade under RCW 19.86.090. The court awarded treble damages in the amount of $940,341.63. The trial court also awarded Pacific its attorney fees and costs.

In March 2018, Pacific's attorney filed a satisfaction of judgment, stating that Haglund had fully paid the amount of the judgment entered against him.

In November 2018, Dickinson sold the property he had purchased from Pacific for $1,075,000.

*Kitsap Bank/Davis Lawsuit*

In 2020, Pacific filed a lawsuit against Kitsap Bank (as successor to FCB) and Davis. The substantive allegations in the complaint mostly tracked the trial court's findings of fact and conclusions of law in the Haglund lawsuit. The complaint alleged causes of action for violation of the CPA based on multiple unfair and deceptive acts and conspiracy in restraint of trade. Pacific sought treble damages under RCW 19.86.090 for the restraint of claim trade.

Kitsap Bank and Davis filed a motion to dismiss under CR 12(b)(6) and for CR 11 sanctions. They argued that Pacific already had obtained full recovery for any damages through Haglund's satisfaction of judgment in the prior lawsuit and could not receive double recovery. Regarding CR 11, Kitsap Bank and Davis claimed that Pacific's complaint had no legal or factual basis because the law was clear that a plaintiff could not obtain double recovery for the same injury.

In opposition, Pacific argued that based on the November 2018 sale, its actual loss of equity was over $840,000. This amount was far more than the $313,447 in compensatory

6

No. 55558-1-II

damages awarded in the Haglund lawsuit, and Pacific claimed that the law allowed recovery of the additional amounts from Kitsap Bank and Davis.

The trial court granted Kitsap Bank and Davis's motion to dismiss Pacific's complaint. The court also concluded that the complaint violated CR 11, and ordered both Pacific and Pacific's attorney to pay Kitsap Bank and Davis's attorney fees.

Pacific appeals the trial court's CR 12(b)(6) dismissal of its complaint and the imposition of CR 11 sanctions.

ANALYSIS

A.     CR 12(b)(6) STANDARD

We review de novo a trial court's ruling on a CR 12(b)(6) motion to dismiss. *Wash. Trucking Ass'ns v. Emp't Sec. Dep't*, 188 Wn.2d 198, 207, 393 P.3d 761 (2017).  Dismissal is appropriate where it appears beyond doubt that a plaintiff will be unable to prove any set of facts that would justify recovery.  *Id.*  We assume the truth of the allegations in the plaintiff's complaint and may consider hypothetical facts not included in the record.  *Id.*

Under CR 12(b)(6), the trial court generally can consider only the allegations contained in the complaint and cannot look beyond the face of the pleadings.  *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 844, 347 P.3d 487 (2015).  However, a trial court can consider certain types of outside information on a CR 12(b)(6) motion, including: (1) documents specifically referenced in the complaint; and (2) through judicial notice, public documents if their authenticity cannot reasonably be disputed.  *Id*.

Here, we rely on the allegations in Pacific's complaint and the attached trial court's findings of fact and conclusions of law, which the complaint expressly incorporated.  And the

7

No. 55558-1-II

satisfaction of judgment and the documents showing the November 2018 sale of the property are public documents whose authenticity cannot reasonably be disputed.

B.     RECOVERY OF DAMAGES ABOVE SATISFIED JUDGMENT AGAINST JOINT TORTFEASOR

Pacific argues that even though it obtained a judgment against Haglund and that judgment has been satisfied, it can maintain an action against Kitsap Bank and Davis to recover additional damages that could not have been claimed in the Haglund lawsuit.  We disagree.

1.     Legal Principles

The fact that an injured party has obtained a money judgment against one tortfeasor does not preclude that party from maintaining an action against a separate tortfeasor.  *Babcock v. State*, 116 Wn.2d 596, 621, 809 P.2d 143 (1991); *Marshall v. Estate of Chapman*, 31 Wn.2d 137, 146, 195 P.2d 656 (1948).  "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor."  RESTATEMENT (SECOND) OF JUDGMENTS § 49 (AM. LAW INST. 1982).

However, one liable person's *payment* of some or all of the judgment amount eliminates any other person's liability for the amount paid.  RESTATEMENT (SECOND) OF JUDGMENTS § 50(2); RESTATEMENT (SECOND) OF TORTS § 885(3) (AM. LAW INST. 1979).  The *Restatement (Second) of Judgments* § 50(2) states, "Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss."  In other words, "[a] payment by one person liable for a loss reduces pro tanto the amount that the injured person is entitled to receive from other persons liable for the loss."  *Id.*, cmt. c.

These *Restatement* rules are consistent with the "one satisfaction" rule applied by Washington courts.  *Marshall*, 31 Wn.2d at 146; *Larson v. Hodge*, 100 Wash. 419, 424, 171 P.

No. 55558-1-II

251 (1918). The rules also are consistent with the basic principle of tort damages that there can be no double recovery for the same injury. *Eagle Point Condo. Owners Ass'n. v. Coy*, 102 Wn. App. 697, 702, 9 P.3d 898 (2000).

2. Analysis

Here, Pacific obtained a judgment against Haglund for compensatory damages in the amount of $313,447. And Haglund paid that judgment amount in full. Therefore, under the general rules stated above, Pacific has no claim against Kitsap Bank and Davis for the compensatory damages awarded in the Haglund lawsuit. Pacific does not argue otherwise, agreeing that Kitsap Bank and Davis would be entitled to an offset for the amount of the Haglund judgment.

Instead, Pacific argues that it can maintain an action against Kitsap Bank and Davis because the Haglund judgment did not encompass all of its damages and therefore did not provide full compensation for its loss. The Haglund judgment amount was based on the property value in May 2015 of $575,000. But the property sold in November 2018 for $1,075,000, which represented its true market value at that time. Pacific claims that it is entitled to recover additional lost appreciation damages based on the 2018 market value, which could not have been claimed in the Haglund lawsuit.

However, under the *Restatement (Second) of Judgments*, a party is precluded from obtaining a judgment for damages in an action against one tortfeasor, having that judgment satisfied, and then attempting to recover additional damages in an action against a second tortfeasor. Comment d to § 50 states,

> The adjudication of the amount of the loss also has the effect of establishing the limit of the injured party's entitlement to redress, whoever the obligor may be. This is because *the determination of the amount of the loss resulting from actual litigation of the issue of damages results in the injured person's being precluded*

9

No. 55558-1-II

> *from relitigating the damages question.* See § 29. Therefore, when a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforce[a]ble claim against any other obligor who is responsible for the same loss.

(Emphasis added.) Comment a to § 49 contains the same rule: "[A] claimant may not relitigate issues determined adversely to him in a prior action against another adversary, including issues relating to the damage he has sustained. *See* § 29."

We agree with and adopt these statements. By litigating its claim against Haglund to judgment, Pacific established the ceiling for the amount of its damages. And because Pacific could not recover more than that judgment amount, satisfaction of the judgment necessarily extinguished its claim against all other tortfeasors.

Section 29 of the *Restatement (Second) of Judgments*, the section referenced in comment d to § 50 and comment a to § 49, states, "A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person." This provision is based on the principle of collateral estoppel, which generally precludes a party from relitigating an issue when a prior adjudication of that issue ended in a final judgment. *See Weaver v. City of Everett*, 194 Wn.2d 464, 473-74, 450 P.3d 177 (2019). Section 29 reflects "offensive" or "nonmutual" collateral estoppel, where a person who was a not a party to the prior adjudication can apply collateral estoppel. Washington law similarly allows a nonparty to the prior litigation to rely on collateral estoppel. *Hadley v. Maxwell*, 144 Wn.2d 306, 311, 27 P.3d 600 (2001); *see also State v. Mullin-Coston*, 152 Wn.2d 107, 113-14, 95 P.3d 321 (2004).

Pacific does not dispute that it would be precluded by collateral estoppel from relitigating the issue of damages with Haglund. Therefore, under the language of § 29, Pacific also is precluded from relitigating the issue of damages with Kitsap Bank and Davis.

No. 55558-1-II

Pacific suggests that it can recover additional damages because the trial court in the Haglund lawsuit awarded damages based solely on trespass. Pacific references comment c to § 50, which states that "[i]f the losses recoverable against two obligors are not the same, the payment from the first does not discharge the obligation of the other." The implication is that the trial court's trespass damages are different than the damages Pacific now is claiming under the CPA and for restraint of trade. However, there is no question that the trial court awarded damages for Haglund's CPA violations and restraint of trade in addition to trespass. And the court trebled Pacific's damages under the CPA as well as under the trespass statute.

Similarly, Pacific suggests that appreciation damages it now claims were not incorporated into the trial court's damages award in the Haglund lawsuit. But the court did award appreciation damages, which it referred to as the loss of equity. Pacific notes that the damages award was based on the property's value in May 2015, and its current claim is based on the property's value in November 2018. But the type of damages is the same. The only difference between what the trial court awarded and what Pacific now claims is the different market values of the property at different times.

Finally, Pacific argues in supplemental briefing that application of collateral estoppel principles is inappropriate here because its recovery of the appreciation damages it now claims was not actually or necessarily decided in the Haglund lawsuit. *See Schibel v. Eymann*, 189 Wn.2d 93, 99, 399 P.3d 1129 (2017) ("Collateral estoppel precludes only those issues that were actually litigated and necessary to the final determination in the earlier proceeding.") But Pacific's focus is too narrow. There is no question that the total amount of Pacific's damages caused by the conduct of Haglund, Kitsap Bank, and Davis was actually decided in the Haglund

11

No. 55558-1-II

litigation. The trial court's damages determination is binding on Pacific, and precludes Pacific from attempting to recover additional damages from Haglund or from any other liable entity.[1]

We hold that Pacific cannot maintain an action against Kitsap Bank and Davis to recover compensatory damages above the amount the trial court awarded in the Haglund lawsuit.

C.      RECOVERY OF TREBLE DAMAGES AWARDED AGAINST JOINT TORTFEASOR

Pacific argues that even if it could not recover additional compensatory damages, it was entitled to recover the amount of treble damages awarded in the Haglund lawsuit if it could prove that Kitsap Bank and Davis violated the CPA. We disagree.

It is undisputed that Haglund has fully satisfied the treble damages the trial court awarded in the Haglund lawsuit. The one satisfaction rule directly applies to preclude Pacific from recovering that same amount from Kitsap Bank and Davis. *Marshall*, 31 Wn.2d at 146; RESTATEMENT (SECOND) OF JUDGMENTS § 50(2).

However, Pacific argues that we should follow cases in other jurisdictions and adopt an exception to the one satisfaction rule for punitive damages. Pacific claims that treble damages authorized under the CPA are akin to punitive damages.

The language of the CPA does not support such an exception. RCW 19.86.090 states that if a person proves a CPA violation, "the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained." The statute allows the court to increase the plaintiff's damage award, not to impose a punitive assessment against one or more defendants. Nothing in this language suggests that a CPA plaintiff can

---

[1] Pacific points out that Kitsap Bank and Davis did not plead or argue collateral estoppel in the trial court and the trial court did not dismiss its lawsuit based on collateral estoppel principles. However, we can affirm the trial court on any basis supported by the record. *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021).

No. 55558-1-II

recover the same treble damages from multiple tortfeasors. And allowing multiple recoveries would mean that the amount of the award would exceed three times the actual damages sustained, contrary to the statutory limitation.

In addition, no Washington case has adopted the exception to the one satisfaction rule that Pacific proposes. Pacific cites *Fife Portal, LLC v. CenturyLink, Inc.*, No. 52415-5-II, slip op. at 13 (Wash. Ct. App. Aug. 11, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2 52415-5-II Unpublished Opinion.pdf, *review denied,* 196 Wn.2d 1043 (2021), for the proposition that this court impliedly recognized the punitive damages exception to the one satisfaction rule. But in *Fife Portal*, this court merely declined to consider the plaintiff's argument that the one satisfaction rule did not apply to treble damages because the defendant could not be held liable for treble damages. *Id.* The court did not imply that the plaintiff's argument had merit.

Pacific relies on cases in other jurisdictions that allow recovery of the same punitive damages from multiple tortfeasors. However, unlike other states, Washington prohibits punitive damages as a matter of public policy unless expressly allowed by statute. *Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 574-75, 919 P.2d 589 (1996). Therefore, Washington public policy favors a narrow rather than an expansive interpretation of the RCW 19.86.090 treble damages provision.

We hold that Pacific cannot maintain an action against Kitsap Bank and Davis for the treble damages the trial court awarded in the Haglund lawsuit.

D.      IMPOSITION OF CR 11 SANCTIONS

Pacific argues that the trial court erred in imposing CR 11 sanctions. We agree.

13

No. 55558-1-II

Under CR 11, a trial court can sanction a party and/or the party's attorney if, among other things, a pleading is not "warranted by existing law or a good faith argument for the extension, modification, or reversal or existing law or the establishment of new law."  As reflected in the rule, a complaint is not baseless if it is warranted by existing law or reflects a good faith argument for extending or changing the law.  *Jones v. A.M.*, 13 Wn. App. 2d 760, 767-68, 466 P.3d 1107 (2020).

Here, Pacific's complaint was not baseless or frivolous.  Although we have adopted and applied provisions of the *Restatement (Second) of Judgments* that foreclose Pacific's claim for additional damages, no prior Washington cases have addressed these provisions.  And no Washington court has addressed whether a plaintiff can recover the same treble damages awarded against one tortfeasor from a different joint tortfeasor.  Pacific's positions on both issues represented a good faith argument for changing the law in this specific factual context.  Therefore, we hold that the trial court abused its discretion in imposing CR 11 sanctions.

## CONCLUSION

We affirm the trial court's CR 12(b)(6) dismissal of Pacific's complaint against Kitsap Bank and Davis, but we reverse the trial court's imposition of CR 11 sanctions.

MAXA, J.

We concur:

GLASGOW, C.J.

VELJACIC, J.

14